RONALD W. BROWN, ESQ. (SBN 107340)
LISA V. RYAN, ESQ. (SBN 217802)
COOK BROWN, LLP
2407 J STREET, SECOND FLOOR
SACRAMENTO, CA 95816
T. 916-442-3100 | F. 916-442-4227
EMAIL: rbrown@cookbrown.com
lryan@cookbrown.com

Attorneys for Defendant DON LAWLEY COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS; RICHARD PIOMBO and RUSSELL E. BURNS, as Trustees,<br><br>Plaintiffs,<br><br>v.<br><br>A PLUS MATERIALS RECYCLING, INC., a dissolved California corporation; DON LAWLEY COMPANY, INC., a California corporation; MR. TRUCKER, a suspended California corporation; ATOZ REPAIR AND REMODEL, LLC a Texas limited liability company; LAWLEY BROS., LLC, a California limited liability company; PENNROD CAPITAL, LLC, an Arizona limited liability company; and DOES 1-10,<br><br>Defendants. | Case No. 4:16-CV-04568-KAW<br><br>**DEFENDANT DON LAWLEY COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT; OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: July 10, 2018<br>Time: 2:30 p.m.<br>Crtrm.: 2<br><br>Action Filed: August 11, 2016<br>FAC Filed: August 24, 2016 |

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MSJ/MSAI
O:\94928\9827\Pld\DLC's MSJ-Opp.docx

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT pursuant to Rule 56 of the Federal Rules of Civil Procedure that on July 10, 2018 at 2:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 2, in the United States District Court Northern District in Oakland, California, the Honorable Claudia Wilken presiding, located in Courtroom 2, at 1301 Clay Street, Oakland, California 94612, Defendant Don Lawley Company, Inc. ("DLC") will and does hereby move for entry of summary judgment on Plaintiffs' Complaint against Defendant Don Lawley Company ("Defendant DLC"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This motion is brought on the grounds that there is no genuine dispute as to any material fact relevant to Plaintiffs' Complaint against Defendant DLC and that Defendant DLC is entitled to judgment as a matter of law as follows:

1. DLC is entitled to summary judgment of the issue of withdrawal liability as DLC has never withdrawn from the Pension Plan and continues to contribute to the pension and operate under the applicable collective bargaining agreement.

2. DLC is further entitled to summary judgment on the issue of withdrawal liability as it is not a member of a common control group with the other named defendants; therefore, there can be no partial withdrawal and no joint liability for withdrawal with other named Defendants.

Defendant's motion is based upon this Notice of Motion, Motion for Summary Judgment and Memorandum of Points and Authorities, the Declaration of Lisa Ryan, the Declaration of Steve Hay, and the documentary evidence, all of which are filed herewith, and on the papers, records, and files herein, and such other testimony, evidence, and argument as may be presented at the hearing of the motion.

DATED: May 14, 2018                COOK BROWN, LLP
                                   RONALD W. BROWN, ESQ.
                                   LISA V. RYAN, ESQ.


                                   By:  /s/ Lisa V. Ryan
                                        Attorneys for Defendant
                                        DON LAWLEY COMPANY, INC.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

I.   INTRODUCTION ........................................................................................................1

II.  PARTIES .......................................................................................................................1

III. FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

IV. LEGAL STANDARD ..................................................................................................3

V.  LEGAL BACKGROUND...........................................................................................4

    A.  Multiemployer Pension Plan Amendments Act of 1980 .......................4

VI. LEGAL ANALYSIS .....................................................................................................5

    A.  DLC was not Under Common Control with A Plus ..............................6

VII.   NO WAIVER ...............................................................................................................8

    A.  Plaintiffs' Action in Pursuing this Claim is Akin to Perpetuating a Fraud on the Court .................................................................................................. 10

VIII. OBJECTIONS TO PLAINTIFFS' DECLARATIONS.....................................11

IX. CONCLUSION ..........................................................................................................12

# TABLE OF AUTHORITIES

**Federal Cases**

*Teamsters Pension Trust Fund-Bd. of Trustees of Western Conference v. Allyn Transp. Co.*
   832 F.2d 502 (9th Cir. 1987) ...................................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...............................................................................................................3

*Automotive Industries Pension Trust Fund v. Tractor Equipment Sales, Inc.*,
   73 F. Supp.3d 1173 (N.D. Cal. 2014) ............................................................................6, 9, 10

*Board of Trustees of Western Conference of Teamsters Pension Trust Fund v. Lafrenz*
   837 F.2d 892 (9th Cir. 1988) ...................................................................................................9

*Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.-Intern. Longshoreman's Ass'n AFL-CIO Pension Plan and Trust,*
   896 F.2d 1330 (11th Cir. 1990) ...............................................................................................9

*Celotext Corp. v. Catrett*,
   477 U.S. 317 (1986) ...............................................................................................................3

*Centra, Inc. v. Central States, Southeast & Southwest Areas Pension Fund,*
   578 F.3d 592 (7th Cir. 2009) ...................................................................................................5

*CMSH Co., Inc. v. Carpenters Trust Fund for Northern California,*
   963 F.2d 238 (9th Cir. 1992) ............................................................................................7, 10

*England v. Doyle,*
   281 F.2d 304 (9th Cir. 1960) .................................................................................................11

*Galgay v. Beaverbrook Coal Co.,*
   105 F.3d 137 (3d Cir. 1997) ....................................................................................................9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ...............................................................................................................3

*N.Y. State Teamsters Conference Pension & Ret. Fund. v. Express Servs. Inc.,*
   426 F.3d 640  (2d Cir. 2005) ...................................................................................................9

*Penn Central Corp. v. Western Conference of Teamsters Pension Trust Fund,*
   75 F.3d 529 (9th Cir. 1996) .....................................................................................................5

*Pension Plan for Pension Trust Fund for Operating Engineers, et al. v. Giacalone Electrical Services, Inc. et al.*,
  2015 WL 3956143 (N.D. Ca. 2015) .................................................................................. 10

*Pension Plan for Pension Trust Fund for Operating Engineers, etc. v. Gallette Concrete, Inc., et al.* 2013 WL 5289017 (N.D. Cal. 2013) ............................................................. 8, 10

*Rheem Mfg. Co. v. Central States Southeast and Southwest Areas Pension Fund*,
  63 F.3d 703 (8th Cir. 1995) ................................................................................................ 9

*Rosenbaum v. Washoe Cnty.*,
  663 F.3d 1071, 1075 (9th Cir. 2011) .................................................................................. 3

*Synanon Church v. United States*,
  579 F.Supp. 967 (D.D.C. 1984) ........................................................................................ 11

*Teamsters Joint Council No. 83 v. Centra, Inc.*,
  947 F.2d 1156 (4th Cir. 1991) ............................................................................................ 9

*Teamsters Pension Trust Fund*,
  789 F.2d 691 (9th Cir. 1986) .............................................................................................. 4

**Federal Statutes**

29 U.S.C. § 1301(b)(1) .......................................................................................................... 6

29 U.S.C. § 1383(a) .............................................................................................................. 4

29 U.S.C. § 1399(c)(5) .......................................................................................................... 1

29 U.S.C. § 1401(A)(1) ......................................................................................................... 9

29 U.S.C. §§ 1001 ................................................................................................................. 4

29 U.S.C. §§ 1381–1453 (1988) ........................................................................................... 4

29 U.S.C. §§ 1451(c) and 1132(e)(1) and (f) ....................................................................... 2

Section 414(c) of the Internal Revenue Code ..................................................................... 6

§ 4205(a)(1) and (b)(1), 29 U.S.C ......................................................................................... 1

§§ 4219(c)(5) .......................................................................................................................... 1

O:\94928\9827\Pld\DLC's MSJ-Opp.docx

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MSJ**

iii

§§ 4301(c) ................................................................................................................................2

**Federal Rules**

Fed. R. Civ. P. 56 .....................................................................................................................3

Federal Rule of Civil Procedure 60(b)(3) ..............................................................................11

Rule 56 of the Federal Rules of Civil Procedure ...................................................................14

**Federal Regulations**

26 C.F.R. 1.414(c)-2 ................................................................................................................6

26 C.F.R. §1.414(c)-2(b)(2)(A) ...............................................................................................7

## I. INTRODUCTION

Plaintiffs allege that on or about December 31, 2012, the named Defendants "withdrew" from the Operating Engineers Pension Plan as that term is defined in ERISA § 4205(a)(1) and (b)(1), 29 U.S.C. § 1385(a)(1) and (b)(1). Plaintiffs contend Defendants are jointly liable for partially withdrawing from the Trust and failing to make installment payments for such withdrawal under ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5). Plaintiffs seek judgment against Defendants for unpaid withdrawal liability of $1,071,767.00, plus accrued interest pursuant to ERISA §§ 4219(c)(5) and 502(g)(2), 29 U.S.C. §§ 1399(c)(5) and 1132(g)(2). But as set forth in detail below, Defendant Don Lawley Company, Inc. has not withdrawn from the Plan. Defendant Don Lawley Company, Inc. continues to operate under the applicable bargaining agreement and contribute to the Plan. Since there is no evidence that the sole shareholder of Don Lawley Company, has or ever had a "controlling interest" in any of the other named corporations, there can be no partial withdrawal and no joint liability for withdrawal liability.

## II. PARTIES

Defendant Don Lawley Company, Inc. ("DLC") is a demolition and excavation contractor located in the Central Valley. (Declaration of Steve Hay, hereafter "Hay Dec." at ¶ 1.) The business was incorporated in 1990 by Don Lawley. (Hay Dec. ¶ 2.) In or about 2007, Don Lawley passed away and the company was owned by the Don Lawley Revocable Family Trust (hereafter "Family Trust"). (*Ibid*.) The Family Trust's trustee and income beneficiary is Don Lawley's widow, Barbara Lawley. (*Ibid*.) On August 8, 2012, Steve Hay entered into a letter of intent to purchase the outstanding stock in DLC from the Family Trust. (Hay Dec. ¶ 3.) Effective August 20, 2102, Steve Hay entered into a Stock Purchase Agreement whereby he purchased all outstanding capital stock in DLC, becoming the sole shareholder of DLC. (*Ibid*.)

DLC has been bound to successive collective bargaining agreements ("CBAs") with the Operating Engineers Local Union No. 3 ("Union") for many years. (Hay Dec. ¶ 4.) As an employer signatory with the Union, DLC has been a participating employer in the

Pension Trust Fund for Operating Engineers ("Plan") and under those agreements has been making contributions to the Pension Trust for all hours worked by covered employees. (*Ibid.*)

To DLC's knowledge, Defendants A Plus Materials Recycling, Inc., Mr. Trucker, A to Z Repair and Remodel, LLC, and Pennrod Capital, LLC, are or were owned in whole or in part by Rodney Lawley. (Hay Dec. ¶ 7.) Rodney Lawley has never independently owned any shares of DLC. (*Ibid.*) Steve Hay has never owned any interest in any of the other named Defendants. In fact, the only trade or business in which Steve Hay has an ownership interest is DLC. (Hay Dec. ¶ 1.)

### III.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs seek withdrawal liability and all other appropriate legal or equitable relief under ERISA against all of the named Defendants. Plaintiff filed the instant action on or about August 11, 2016 in the United States District Court for the Northern District of California. Jurisdiction was conferred in federal court by virtue of ERISA §§ 4301(c) and 502(e)(1) and (f), 29 U.S.C. §§ 1451(c) and 1132(e)(1) and (f).

Defendant DLC has never ceased participating in the trust fund. (Hay Dec. ¶ 5.) DLC has never terminated the CBA and it is still making contributions for one employee performing covered work. (*Ibid.*) However, the Pension Trust alleges that DLC and A Plus Material were participating employers in the Pension Plan and members of the same controlled group. The Pension Trust alleges on or about December 31, 2012, DLC and related entities incurred a partial withdrawal from participation in the Plan which triggered the Plan to assess withdrawal liability against all members of the controlled group in the sum of $1,071,767.00. (Plaintiffs' First Amended Complaint ("FAC") at ¶¶ 19 & 20.) The Pension Trust issued a Notice of Assessment on February 6, 2015, alleging withdrawal based on a 70 percent contribution decline in 2012 against DLC and A Plus Material Recycling, Inc. (FAC at ¶ 20.) DLC did not understand the assessment to apply to it since it was still contributing to the trust. (Hay Dec. ¶ 6.) Therefore, it did not respond to the assessment.

## IV. LEGAL STANDARD

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011); Fed. R. Civ. P. 56(a). The moving party hears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court that there is an absence of evidence to support the non-moving party's case. *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id*. at 324 (quoting then-Fed. R. Civ. P. 56(c). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence … will be insufficient; there must evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighting of the evidence, and the drawing of legitimate inferences from the factors are jury functions, not those of a judge … ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of facts and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594, F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

V. **LEGAL BACKGROUND**

A. **Multiemployer Pension Plan Amendments Act of 1980**

Pension plans are federally regulated pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. (1988).  The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1453 (1988), amended ERISA to allow plans to impose proportional liability on withdrawing employers for the unfunded vested benefit obligations of multiemployer plans.

This system is designed to make employers pay their share of the real cost of pensions by paying a share of the difference between the assets already contributed and the vested benefit liability. *Woodward Sand Co., Inc. v. W. Conf. Teamsters Pension Trust Fund*, (9th Cir. 1986) 789 F.2d 691, 694.  When an employer withdraws from a multiemployer pension plan, ERISA requires the withdrawing employer to compensate the pension plan for benefits that have already vested with the employees at the time of the employer's withdrawal.  (*Id*.)  This "withdrawal liability" is assessed against the employer to fund anticipated retirement benefits. Unfortunately, data from the Pension Benefit Guarantee Corporation (PBGC) indicates the construction industry is a key contributor to the drastic overall underfunding of Multi-Employer Pension Plans.[1]

There can be either a "complete withdrawal" or "partial withdrawal."  A complete withdrawal occurs when an employer ceases permanently to have an obligation to contribute to the plan or permanently ceases covered operations under the plan.  An employer generally effects a complete withdrawal when its bargaining agreement expires and the employer no longer has an ongoing duty under the National Labor Relations Act (NLRA) to make contributions under its expired CBA. (29 U.S.C. § 1383(a).) Whereas ERISA § 4205(a) defines a partial withdrawal as:

- A cessation of contribution obligation under one, but not all bargaining agreements, and continuation of work in the CBA's jurisdiction of the type

---

[1] https://www.pbgc.gov/about/factsheets/page/plan-insolvency.html

    for which contributions were previously required, or a transfer of such work to another location or another entity owned or controlled by employer, or

- A cessation of contribution obligation at one but not all facilities, and continuation of work at the facility of the type for which contributions were previously required, or
- 70% decline test (mathematical test which compares contribution base units (CBU's) in each of past three plan years to the high two-year average in the preceding five years).

## VI.     LEGAL ANALYSIS

Plaintiffs' theory of DLC's liability for A Plus' withdrawal liability is that they were both members of a common control group. Thus, when one member of the group (A Plus) ceased operations in December 2012, resulting in a 70% plus reduction in CBAs by the group, the Plan assessed withdrawal liability against all members of what they deemed to be the common control group. (See Exh. 1 to FAC.) But of course, if DLC and A Plus have never been part of the same common control group, Plaintiffs' theory of liability falls like a house of cards. By Plaintiffs' own admission, DLC remains obligated to contribute to the Plan and has been doing so. See Plaintiffs' opening brief at p. 6. Therefore, the only employer that could have arguably withdrawn was A Plus when it ceased operations in December 2012. But the cessation of operations constitutes a complete withdrawal, not a partial withdrawal. (See Plaintiffs' opening brief at p.4: "When the employer is a controlled group, no complete withdrawal occurs until the entire group ceases to have an obligation to contribute to the plan," citing *Penn Central Corp. v. Western Conference of Teamsters Pension Trust Fund*, 75 F.3d 529, 533-535 (9th Cir. 1996); *Centra, Inc. v. Central States, Southeast & Southwest Areas Pension Fund*, 578 F.3d 592, 597-598 (7th Cir. 2009).) Plaintiffs have not pled a complete withdrawal by A Plus. DLC is the only defendant alleged by plaintiffs to have a continuing obligation to contribute to the plan. Therefore, if DLC is not part of A Plus' control group, no partial withdrawal has occurred; only complete withdrawal. Therefore, the entire complaint must be dismissed, as long as it is

established that DLC is not a common control group member with A Plus.

## A.    DLC was not Under Common Control with A Plus

"Withdrawal liability" is assessed against the withdrawing employer, and 29 U.S.C. § 1301(b)(1) defines "employer" to include not only the entity obligated to contribute to the pension plan, but also all "trades or businesses" that are under "common control" with that entity. (See 29 U.S.C. § 1301(b)(1) and *Automotive Industries Pension Trust Fund v. Tractor Equipment Sales, Inc*. 73 F. Supp.3d 1173 (N.D. Cal. 2014).)  Under ERISA's "controlled group" rule, nominally separate companies under common control may be treated as one for assessing and collecting withdrawal liability.  The point of section 1301(b)(1) is simply to prevent the controlling group of a company to avoid withdrawal liability by shifting corporate assets into other business ventures under its control.  PBGC regulations specify that "trades or businesses . . . under common control" shall have the "same meaning" as in Section 414(c) of the Internal Revenue Code and the related IRS regulations.

There are three different categories of "businesses under common control," including: (1) parent-subsidiary groups; (2) brother-sister groups; and (3) combined groups.  (26 C.F.R. 1.414(c)-2.)  A "brother-sister group of trades or businesses under common control" means two or more organizations conducting trades or businesses if: (i) the same five or fewer persons who are individuals, estates, or trusts own (directly and with the application of §1.414(c)-4) a controlling interest (at least 80%) in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each organization, such persons are in effective control of each organization.  (*Id*. at (c).)  The five or fewer persons whose ownership is considered for purposes of the controlling interest requirement for each organization must be the same persons whose ownership is considered for purposes of the effective control requirement.

For example, in order to establish that two corporations are brother-sister businesses, the same group of individuals must have a "controlling interest" in both

corporations. (*See CMSH Co., Inc. v. Carpenters Trust Fund for Northern California* 963 F.2d 238, 241 (9th Cir. 1992), holding that the corporations did not constitute a "brother-sister" group jointly liable for withdrawal liability, where same group of individuals did not have controlling interests in both corporations.). The Code of Federal Regulations defines "controlling interest" as follows:

> In the case of an organization which is a corporation, ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation. (26 C.F.R. §1.414(c)-2(b)(2)(A).)

Thus, the same group of individuals must have a "controlling interest" in both corporations for the corporations to be members of a brother-sister common control group. As conceded by Plaintiff, Defendant DLC was at all material times bound to the CBA with Operating Engineers, Local No. 3. As such, DLC consistently made contributions to the Pension Trust Fund for all hours of covered work performed by its employees. The Plan claims that the "withdrawal" occurred in December 2012. But at that time, DLC was wholly owned by Hay. Hay owned 100% of the voting power of all classes of stock in DLC. (Hay Dec. ¶ 3.) Moreover, Hay never had any ownership interest in A-Plus Material Recycling, nor any of the other named Defendants. (Hay Dec. ¶ 8.) Since the same five or fewer persons did not hold 80% of ownership interest in both DLC and A Plus, they cannot be common control members as a matter of law.

Plaintiffs' "evidence" of common ownership of DLC and A Plus is virtually non-existent. Plaintiffs appear to offer two pieces of evidence, neither of which is in the least persuasive. First, they try to infer that Rodney was an owner of DLC because he signed the Interim Agreement with OE-3 on July 1, 2010 as "President" of DLC. (See Plaintiffs' opening brief at p. 6.) We know no case authority which suggests that a purported president of a corporation is implied as having an ownership interest in the company.

Second, they contend that because a lawyer representing both A Plus and DLC stated that the entities were still bound to the CBAs that somehow they were entitled to infer that they were owned in common (presumably by Rodney Lawley). (See Plaintiffs'

opening brief at pp. 6-7.)  Such an inference is wholly unjustified, particularly in light of the fact that in response to the attorney's letter, counsel for the Plan, wrote back seeking information and documentation necessary to determine if A Plus and DLC are "members of the same control group."  (See Exhibit G to Declaration of Greg Trento filed by Plaintiffs.)  Clearly, the Plan had no information on the ownership interests of A Plus and DLC and specifically set out to secure such information.

Based on the foregoing, evidence provided by defendants clearly establishes that Rodney Lawley never had any ownership interest in DLC, and Steve Hay never had any ownership interest in A Plus.  Plaintiffs have provided no competent evidence to the contrary.  Accordingly, the court should find that A Plus and DLC are not members of a common control group, and that DLC cannot be considered to have partially withdrawn from the Plan since it continues to be bound to the CBA and make contributions to the Plan.

## VII.  NO WAIVER

There is no merit to the Plan's contention that DLC's failure to invoke arbitration served to waive the common control group defense raised by DLC.  Plaintiffs concede that there is abundant circuit court authority (but not the Ninth Circuit) for the proposition that common control group liability is an issue that a court may determine, and is not waived when arbitration is not invoked.  However, Plaintiffs overlooked apprising the court of the decisions emanating from the Northern District of California with the same holdings.

In *Pension Plan for Pension Trust Fund for Operating Engineers, etc. v. Gallette Concrete, Inc., et al*. 2013 WL 5289017 (N.D. Cal. 2013), the same plaintiff as this case, claimed that defendants had waived their right to challenge their control group status because they failed to initiate arbitration.  In addressing the issue and finding no waiver, Judge Illston reasoned-

> Although it appears that the Ninth Circuit has not yet directly addressed this issue (fn. omitted), several other circuit courts have held that issue of whether a defendant is an employer within the meaning of MPPAA is a matter of law

for the court to decide, not the arbitrator. *See N.Y. State Teamsters Conference Pension & Ret. Fund. v. Express Servs. Inc.*, 426 F.3d 640 645 (2d Cir. 2005); *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 142 (3d Cir. 1997); *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 1156, 122 (4th Cir. 1991); *Rheem Mfg. Co. v. Central States Southeast and Southwest Areas Pension Fund*, 63 F.3d 703, 706 (8th Cir. 1995); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.-Intern. Longshoreman's Ass'n AFL-CIO Pension Plan and Trust*, 896 F.2d 1330, 1345 (11th Cir. 1990). There is an exception to this rule (fn. omitted): if the parties dispute whether an entity has ceased to be an "employer" under the MPPAA, rather than whether the entity has ever become an employer, that dispute must be resolve in arbitration. *See Galgay*, 105 F.3d at 141; *Centra* 947 F.2d at 122. Based on the allegations in the complaint, it does not appear that this exception applies. Therefore, the Court declines to hold that defendants are barred from challenging plaintiffs' control group allegations. *Id*. at p. 3.

The "exception" noted by the court also does not apply in this case. Defendants contend that Rodney Lawley (the 100% shareholder of A Plus) had never had an ownership interest in DLC, and Steve Hay (the 100% shareholder of DLC) has never had any ownership interest in A Plus. Therefore, the issue is <u>not</u> whether DLC <u>ceased</u> to be a common control group employer member of A Plus but rather whether it ever was a common control group member, an issue for adjudication by the court, not the arbitrator.

The same issue was also addressed in *Automotive Industries Pension Trust Fund, et al. v. Tractor Equipment Sales, Inc. et al.*, 73 F. Supp. 3d 1173 (N.D. Cal 2014). There, the same law firm representing plaintiffs in this case contended that individually named defendants had waived their right to challenge the Van Tuyls' defense that they were not common control group members with the withdrawn employer. In affirming their right to a judicial determination on the issue, Judge Orrick reasoned-

> Nevertheless, the Van Tuyls have not waived their right to contest the issue of controlled group liability. As noted above, under 29 U.S.C. § 1401(A)(1), "[a]ny dispute over withdrawal liability as determined under the enumerated statutory provisions shall be arbitrated." *Allyn Transp. Co.*, 832 F.2d at 504. But the only "enumerated statutory provisions" in section 1401(a) (1) are sections 1381 through 1399. *See* 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of multiemployer plan *concerning a determination made under sections 1381 through 1399 of this title* shall be resolved through arbitration.")(emphasis added). Controlled group liability, on the other hand, is governed by section 1301(b)(1). *See Lafrenz* 837 F.2d at 893-95. Moreover, while the Ninth Circuit has not yet directly

addressed the issue, several other circuit courts have held that the issue of whether a defendant is an employer within the meaning section 1301(b)(1) is a matter of for the court to decide, not the arbitrate. *See Galletti*, 2013 WL 5289017, at *2 (listing cases from the Second, Third, Fourth, Eighth, and Eleventh Circuits). The Van Tuyls' failure to arbitrator does not preclude them from challenging their alleged controlled group liability here.

Finally, in *Pension Plan for Pension Trust Fund for Operating Engineers, et al. v. Giacalone Electrical Services, Inc. et al.*, 2015 WL 3956143 (N.D. Ca. 2015) (same plaintiff and law firm as this case), plaintiffs argued that by failing to initiate arbitration, the defendants had waived the right to contest whether they were part of a common control group. Judge Illston followed the reasoning in her previous *Galletti* decision as well as judge Orrick's in *Tractor Equipment Sales* and concluded "that the Giacalones have not waived their right to contest whether the property is a 'trade or business' – and therefore a member of a controlled group – in a judicial forum" (fn. omitted). (*Id.* at .p.5.)

Thus, every court in the Northern District to have addressed the issue has held that common control group membership is <u>not</u> waived by defendant's failure to initiate arbitration. This court is urged to also find, as a matter of law, that DLC has not waived its right to a judicial determination that it is not in the A Plus common control group, by virtue of its failure to arbitrate the issue.

Plaintiffs cannot be heard to claim surprise or prejudice in the common control group defense made by DLC in this case. Following the filing of this action, Plaintiffs were provided with documents and a letter from defense counsel, establishing that DLC's sole shareholder never had any ownership interest in A Plus. (Declaration of Ryan, ¶¶ 2 & 3.) Nonetheless, Plaintiffs continued to maintain that DLC had waived its right to contest the common control group issue, in spite of all the Northern District of California case authority to the contrary. (*Ibid*.)

**A. Plaintiffs' Action in Pursuing this Claim is Akin to Perpetuating a Fraud on the Court**

Finally, it is disingenuous for Plaintiffs to allege that DLC and A Plus' were both members of a common control group thereby triggering any withdrawal liability without a shred of evidence. But their decision to proceed with this action, even after receiving

detailed evidence that Rodney Lawley never owned any interest in DLC, is tantamount to perpetuating a fraud on the court.

Federal Rule of Civil Procedure 60(b)(3) expressly sets forth such a claim to protect the integrity of the judicial process.  While DLC does not purport to seek a claim of fraud on the court, Plaintiffs must be reminded of the important public policy behind these rules where fraudulent claims attempt to "subvert the integrity of the court itself." (*Synanon Church v. United States*, (D.D.C. 1984) 579 F.Supp. 967, 974; see also *England v. Doyle*, (9th Cir. 1960) 281 F.2d 304, 309, finding fraud on the court requires an unconscionable plan "which is designed to improperly influence the court in its decision.")

Here, Plaintiffs have had all of the information needed to determine whether there was ever a viable allegation that that A Plus and DLC were members of a common control group. DLC has provided Plaintiffs evidence in the form of the DLC Stock Purchase Agreement and the Letter of Intent to purchase stock in DLC to prove that Rodney Lawley never had any ownership interest in DLC.  (Ryan Dec. at ¶ 2.) As set forth above, Plaintiffs have provided no competent evidence to the contrary. Moreover, there is no allegation that Steve Hay ever owned any interest in any of the other named Defendant entities.  There is further no dispute that DLC continues to be bound to the CBA and continues to make contributions to the Plan.  Despite such evidence wholly undermining Plaintiff's theory of common control group liability, Plaintiffs proceeded with this action knowing they have no evidence to support their theory of common control group liability. Such action is not simply an unintentional misrepresentation, but a deliberate attempt to mislead the court.

## VIII.   OBJECTIONS TO PLAINTIFFS' DECLARATIONS

**Declaration of Greg Trento:**   Plaintiffs submit a declaration of Greg Trento in support of its motion for summary judgment. However, Mr. Trento's declaration, as a "Fund Manager" supervising administrative operations on behalf of the Trust Fund, is wholly irrelevant as to the issues before the court. Specifically, Paragraph 5 related to who signed the Collective Bargaining Agreement is simply not relevant to any issue in this litigation or motion. (Fed. R. Evid. 401 and 402.)  The issue for common control liability is

ownership. Mr. Trento offers no information related to the ownership interests in DLC and therefore his statements related to who signed a CBA appear to also constitute inadmissible conclusions on an ultimate legal issue. See *Crandall v. Starbucks Corporation*, 249 F.Supp.3d 1087, 1101 (N.D. Cal. 2017). The fact that no new CBA was signed after Steve Hay purchased DLC is also irrelevant and should be struck per Rule 401.

**Declaration of M. Minser:** DLC objects to the declaration of M. Minser in Support of Plaintiff's Motion for Summary Judgment as lacking first-hand knowledge of the facts to which he attests. He states in paragraph 3 that he has "reviewed Saltzman & Johnson's file on this case and have noted that the primary reason for the rescission of the 2011 complete withdrawal liability assessment was the December 2, 2011 letter…" At no point does Mr. Minser establish a proper foundation for such a conclusion. (Fed. R. Evid. 602.) Moreover, his opinion as to why the Trust decided to rescind its 2011 assessment is improper and irrelevant to the legal issue of whether withdrawal liability was ever properly assessed against DLC. (Fed. R. Evid. 401, 402 and 701.)

## IX.   CONCLUSION

Under MPPAA, when members of a common control group reduce contributions into a multiemployer pension plan by more than 70%, they may be jointly and severally assessed with partial withdrawal liability. However, when there is a complete cessation of the obligation of all common control group members to contribute to the plan, the plan shall assess the members jointly with complete withdrawal liability.

In this case plaintiffs' contend that DLC and other named defendants were in the same common control group with A Plus, which ceased operations and ceased its obligation to contribute to the Plan in December 2012. Since DLC remained a contributing employer and the Plan believed (incorrectly) that DLC and A Plus were both owned by A Plus' 100% shareholder, they considered them to be members of the same common control group and assessed them with partial withdrawal liability.

The uncontradicted evidence however, shows that Steve Hay was the 100% shareholder in DLC and never had any ownership in A Plus. Accordingly, DLC is not in a

common control group with A Plus, and it was error for the plaintiffs to assess partial withdrawal liability against DLC and the other named defendants.

There is no merit to the plaintiff's contention that DLC (or any other defendant) has waived its right to challenge the Plan's determination on common control group membership by virtue of their failure to initiate arbitration.  All the courts of appeal and district judges in this district which have considered the issue have uniformly held that the common control group membership issue is subject to judicial determination.  Furthermore, plaintiffs' continued insistence that DLC and A Plus may not challenge their obviously false contention that there is common ownership between DLC and A Plus suggests an attempt to perpetrate a fraud on the court, by seeking a judgment to which they are not entitled.

DATED:  May 14, 2018

COOK BROWN, LLP
RONALD W. BROWN, ESQ.
LISA V. RYAN, ESQ.


By:   /s/ Lisa V. Ryan
        Attorneys for Defendant
        DON LAWLEY COMPANY, INC.