Michele R. Stafford, Esq. (SBN 172509)
Anne M. Bevington, Esq. (SBN 111320)
Matthew P. Minser, Esq. (SBN 296344)
SALTZMAN & JOHNSON LAW CORPORATION
44 Montgomery Street, Suite 2110
San Francisco, California  94104
Telephone: (415) 882-7900
Facsimile: (415) 882-9287
Email: mstafford@sjlawcorp.com
Email: abevington@sjlawcorp.com
Email: mminser@sjlawcorp.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS; RICHARD PIOMBO AND RUSSELL E. BURNS, AS TRUSTEES,<br><br>Plaintiffs,<br><br>v.<br><br>A PLUS MATERIALS RECYCLING, INC., et al.,<br><br>Defendants. | Case No. 16-cv-004568-CW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      July 10, 2018<br>Time:      2:00 p.m.<br>Location:  Courtroom 2<br>           Oakland Federal Courthouse<br>           1301 Clay Street, Oakland, CA<br>Judge:     Hon. Claudia Wilken |

1

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

I.     THE  DECEMBER 13, 2016 CASE MANAGEMENT ORDER ...................2

II.    THE UNDERLYING ASSESSMENT IN THIS MATTER IS AN ASSESSMENT OF A PLUS *AND* DLC AS THE EMPLOYER; DLC IS NOT MERELY A PURPORTED CONTROLLED GROUP MEMBER. ......................................3

    A.    The Assessment ....................................................................4

    B.    The Definition of an Employer ..........................................5

    C.    A Plus and DLC's Status as a Single Employer Must Be Arbitrated .........................5

    D.    The Case Law Cited by DLC is Inapposite ......................6

III.   DLC'S CONTINUING STATUS AS AN EMPLOYER DOES NOT PRECLUDE A JUDGMENT IN PLAINTIFFS' FAVOR;  STANDING ON ITS OWN, DLC WOULD HAVE  SIGNIFICANT WITHDRAWAL LIABILITY TO PLAINTIFFS ...........8

IV.   DLC'S FRAUD ARGUMENT HAS NO MERIT ......................................8

V.    THE LAWLEY ENTITIES' BANKRUPTCY ............................................9

    A.    California Corporations A Plus Materials Recycling, Inc. and Mr. Trucker, Inc. Did Not File for Bankruptcy ...........9

B.    CORPORATIONS DO NOT RECEIVE A "DISCHARGE" IN CHAPTER 7 BANKRUPTCY PROCEEDINGS ...........9

C.    NONE OF THE AMOUNTS SOUGHT HEREIN WERE DISCHARGED BY THE BANKRUPTCY COURT ...........9

VI.   IMPROPER NOTICE ALLEGED BY THE LAWLEY ENTITIES ...................10

VII.  CONTROLLED GROUP STATUS OF THE LAWLEY ENTITIES ...............11

    A.    A Plus and DLC ..............................................................11

    B.    Mr. Trucker, Inc. ..............................................................11

    C.    AtoZ Repair and Remodel, LLC ....................................11

    D.    Lawley Bros, LLC ...........................................................12

    E.    Pennrod Capital, LLC .....................................................12

VIII. DAMAGES SOUGHT ............................................................................13

    A.    Principal Withdrawal Liability, Interest, and Liquidated Damages .........13

    B.    Attorneys' Fees and Costs ...............................................13

i

IX.   OBJECTIONS TO DECLARATIONS ...................................................................13

    A.   M. Minser Declaration .................................................................14

    B.   G. Trento Declaration .................................................................14

    C.   M. Stafford Declaration .............................................................15

X.   CONCLUSION .........................................................................................15

ii

1

## TABLE OF AUTHORITIES

2

**Cases**

3

11 U.S.C. § 727(a)(1) ........................................................................................................ 10

4

*Auto. Indus. Pension Trust Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp. 3d 1173 (N.D. Cal. 2014).... 7

5

*Bd. of Trs. of the W. Conf. of Teamsters Pension Trust Fund v. Az.-Pac. Tank Lines*, 1983 U.S. Dist.

6

LEXIS 12709 (N.D. Cal. Oct. 14, 1983) ................................................................... 6

7

*Bd. of Trs. v. Northern Steel Corp.*, 657 F. Supp. 2d 155 (D.D.C. 2009) ................................. 11

8

*Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110 (E.D. Cal. 2006) .......................... 15

9

*Carpenters Pension Trust Fund for N. Cal. v. Walker*, 2014 U.S. Dist. LEXIS 53777 (C.D. Cal. Apr. 17

10

2014) ......................................................................................................................... 5

11

*Cent. States, Se. & Sw. Areas Pension Fund v. Progressive Driver Servs., Inc.*, 940 F. Supp. 1311 (N.D.

12

111. 1996) ................................................................................................................. 3

13

*Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241 (3d Cir. 1987) ........ 5

14

Kearney v. Standard Insurance, 175 F.3d 1084 (9th Cir. 1999) ............................................. 2

15

*Local 705, Int'l Bhd. of Teamsters Pension Trust Fund v. Packey, Inc.*, 1997 U.S. Dist. LEXIS 18311,

16

1997 WL 724548  (N.D. Ill. Nov. 5, 1997) ............................................................... 3

17

*NLRB v. Better Bldg. Supply Corp.*, 837 F.2d 377 (9th Cir. 1988) ........................................ 10

18

*Northwest Adm'rs, Inc. v. Northern Distrib., LLC*, 2011 U.S. Dist. LEXIS 7343 (W.D. Wash. Jan. 26,

19

2011) ....................................................................................................................... 11

20

*Pension Plan for Pension Trust Fund for Operating Eng'rs v. Giacalone Elec. Servs., Inc.,* LEXIS

21

84140; 2015 WL 3956143 (N.D. Cal. 2015) ........................................................... 7

22

*Pension Plan for Pension Trust Fund v. Galletti Concrete, Inc.,* 2013 U.S. Dist. LEXIS 134367; 2013

23

WL 5289017 (N.D. Cal. 2013) ................................................................................ 7, 13

24

*Pension Trust Fund for Operating Eng'rs, et al. v. Hillsdale Rock Co., Inc.*, 2011 U.S. Dist. LEXIS

25

103553 (N.D. Cal. Aug. 19, 2011) ........................................................................... 6

26

*Reed v. Norman* 48 Cal.2d 338 (1957) .............................................................................. 12

27

*Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, (9th Cir. 2010) ........... 5

28

i

*Sade Shoe Co. v. Oschin & Snyder*, 217 Cal. App. 3d 1509 (1990) ........................................................ 12

*Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258 (2d Cir. N.Y. 1990)........................................ 11

*Trs. of the Suburban Teamsters of N. Ill. Pension Fund v. Bolingbrook Redi-Mix Co.*, 2016 U.S. Dist.

      LEXIS 40531 (N.D. Ill. 2016) ................................................................................................. 3, 4

**Statutes**

ERISA § 4205(b) ............................................................................................................................... 9

ERISA § 4219(b)(2)(A) ...................................................................................................................... 6

ERISA § 4221(a)(1)(A) ...................................................................................................................... 6

ERISA § 4221(b)(1)........................................................................................................................ 1, 6

1

**OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

2

3

**INTRODUCTION**

4

Defendants' briefs evidence a fundamental misunderstanding of the underlying issues in this

5

matter. Defendant DLC appears to mistake DLC for a non-signatory controlled group member, from

6

whom Plaintiffs are attempting to seek recovery. This is not the case.

7

Here, there is no dispute that A Plus and DLC were both signatory employers that contributed to

8

the Plaintiff Pension Plan, and that DLC remains a contributing employer. There is likewise no dispute

9

that A Plus and DLC were both assessed with partial withdrawal liability as a single employer. It is

10

undisputed that neither A Plus nor DLC initiated the mandatory arbitration that is required of an

11

employer that wishes to contest withdrawal liability, and that neither of them have paid that liability.

12

Accordingly, the Trust Fund is entitled to judgment against A Plus and DLC as a matter of law, because

13

when an employer fails to timely initiate arbitration, the withdrawal liability is due and owing in the

14

amount, and on the schedule, set forth by the Trust Fund. ERISA § 4221(b)(1), 29 U.S.C. § 1401(b)(1).

15

In their opening brief, Plaintiffs carefully outlined the history of this matter, including the first

16

assessment of August 31, 2011. The Trust Fund Administrator sent that assessment to A Plus, DLC, and

17

Rodney Lawley individually, notifying them of their <u>complete</u> withdrawal liability. *See* Declaration of

18

Greg Trento In Support of Motion for Summary Judgment ("Trento MSJ Decl."), [Dkt. No. 43], ¶10].

19

[*Trento MSJ Decl*. ¶10]. A Plus and DLC, collectively through Counsel, submitted a response to the

20

assessment dated December 2, 2011. The response, sent by counsel for both A Plus and DLC, advised

21

that there had been no withdrawal **because DLC still operated under its collective bargaining**

22

**agreement and continued to have an obligation to contribute to the Plan** even though it currently

23

had no employees who were members of the Union. [*Trento MSJ Decl*. ¶11]. By letter of September 18,

24

2012, the Plan, through Counsel, rescinded the assessment for the complete withdrawal liability because

25

DLC continued to have an obligation to contribute to the Plan. [*Trento MSJ Decl*. ¶12].

26

In the February 6, 2015 assessment letter, A Plus and DLC, as the employer, were determined to

27

have <u>partial</u> withdrawal liability of $1,071,767.00. [*Trento MSJ Decl*. ¶14]. Since Plaintiffs at that time

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION AND REPLY**
**Case No. 16-cv-004568-CW**

P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and Reply.docx

regarded both A Plus and DLC as a controlled group/single employer, Plaintiffs combined their contribution base units (CBUs) when assessing the withdrawal liability. [*See* Declaration of Jonathan Feldman ("Feldman Decl.") filed concurrently herewith, ¶8]. As both A Plus and DLC had contributed to the Plaintiff Pension Plan, they were both considered "employers" as required by statute.

As an assessed contributing employer, A Plus and DLC were required to initiate arbitration in order to contest the assessment (to dispute their CBUs being combined in assessing the withdrawal liability).

In support of their argument, DLC cites several other cases litigated by Plaintiffs' Counsel, where Judges of this Court have held that controlled group status is a matter for judicial determination. Plaintiffs agree. However, mere controlled group status is not the issue at hand with regard to DLC, because DLC's liability does not arise solely because it is alleged to be under common ownership with a signatory employer. To the contrary, DLC is admittedly a signatory employer in its own right, and its CBUs, included in the assessment, are a critical part of the assessment itself.

## I.      THE  DECEMBER 13, 2016 CASE MANAGEMENT ORDER

This Court's December 13, 2016 Case Management Order (Dkt. #35) states, "The case shall be resolved on cross-motions for judgment pursuant to Rule 52 of the Federal Rules of Civil Procedure and Kearney v. Standard Insurance, 175 F.3d 1084 (9th Cir. 1999). The briefs shall address the scope of review and whether the Court's review is limited to the Administrative Record or whether supplemental evidence should be considered." [Dkt. # 35.]

Plaintiffs respectfully believe that the Case Management Order considers the type of case that this matter *should have been*. Had the Defendants properly initiated arbitration, an administrative record would exist, as contemplated in the Case Management Order. However, as there was no "administrative review" of the contested facts in this matter (as contemplated in *Kearney v. Standard Insurance*), no record exists.

Based on the status of this matter, and the fact that arbitration was never initiated, Plaintiffs posit that a Motion for Summary Judgment was the only dispositive motion appropriate in this case to be filed pursuant to the schedule specifically set by the Court in the Case Management Order.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION
  AND REPLY**
**Case No. 16-cv-004568-CW**

P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and Reply.docx

In the Case Management Order, the Court clearly outlined a briefing scheduled for dispositive motions in this matter. The Order states, *"Plaintiffs shall file their motion for judgment in a single brief of no greater than twenty five pages on April 23, 2018."* In response, Plaintiffs filed their Motion on April 23, 2018, which totaled exactly twenty five pages. The Order further states, *"Defendants shall file their opposition and cross-motion for judgment **in a single brief of no greater than twenty-five pages on May 14, 2018."*** (emphasis added). [Dkt. # 35.]

In contravention of the Case Management Order, Defendants filed separate oppositions/cross-motions contained within separate briefs totaling 35 pages. The failure of Defendants' Counsel to work together to follow this Court's Order results in briefs that inefficiently repeat many of the same issues. Plaintiffs will respond in accordance with this Court's Order in one brief.

## II.   THE UNDERLYING ASSESSMENT IN THIS MATTER IS AN ASSESSMENT OF A PLUS *AND* DLC AS THE EMPLOYER; DLC IS NOT MERELY A PURPORTED CONTROLLED GROUP MEMBER.

The issues of controlled group liability and employer status have been conflated in DLC's brief, by hanging on the issue of whether DLC was properly included in a controlled group with A Plus. Courts have held that "the purpose of the controlled group inquiry **is to determine whether an entity is an employer for purposes of ERISA.**" *Cent. States, Se. & Sw. Areas Pension Fund v. Progressive Driver Servs., Inc.*, 940 F. Supp. 1311, 1313 n.1 (N.D. 111. 1996); *See also Local 705, Int'l Bhd. of Teamsters Pension Trust Fund v. Packey, Inc.*, 1997 U.S. Dist. LEXIS 18311, 1997 WL 724548, at *5 (N.D. Ill. Nov. 5, 1997). *Trs. of the Suburban Teamsters of N. Ill. Pension Fund v. Bolingbrook Redi-Mix Co.*, 2016 U.S. Dist. LEXIS 40531, *7-8 (emphasis added).   Here, DLC's controlled group status has no bearing on whether it was an employer, because there is no dispute that it was, and remains, a contributing employer to the Plan regardless of its controlled group status.

The law is clear, both in the Ninth Circuit and elsewhere, that where a purported controlled group member is contesting its status as an employer, judicial intervention is warranted. A District Court (outside the Ninth Circuit) best summarized the need for judicial intervention for this type of situation:

> *"Imagine that there is a multiemployer pension fund that manages a pension plan for a few construction companies in New York, all of which*

---

3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION AND REPLY**
**Case No. 16-cv-004568-CW**

*are part of a control group. The fund decides to send a letter to a farmer in North Dakota, saying that he also is a member of the New York control group and is liable for the withdrawal payment due from one of the construction companies. Under Plaintiffs' understanding of the law, that farmer would have to initiate arbitration to challenge the fund's determination, incurring significant cost and hassle. And he would have to do so quickly. If he did not, the farmer would be bound to pay the withdrawal liability by a statute that never even applied to him (because he never actually was an "employer"). This would be an absurd and unjust result. It would encourage funds to try to game the system, particularly by preying on those who lack the resources or sophistication to understand a complex legal issue. Such a result is not required by the MPPAA or Seventh Circuit case law." Trs. of the Suburban Teamsters of N. Ill. Pension Fund v. Bolingbrook Redi-Mix Co.* 2016 U.S. Dist. LEXIS 40531

This situation is markedly different because (1) DLC was unquestionably an "employer" within the meaning of the statute, and (2) DLC's CBUs (contribution base units) were included in the calculation of the underlying withdrawal liability assessment. [*Feldman Decl.* ¶8] [*Trento MSJ Decl.*, Ex. I].

### A.  The Assessment

On or about December 1, 2014, Horizon Actuarial calculated the withdrawal liability of a partial withdrawal for Defendants A Plus and DLC and provided it to the Trust Fund's legal counsel, with a copy to ATPA. [*Trento MSJ Decl.* ¶13]. **This calculation specifically treated A Plus and DLC as a single employer. In doing so, <u>the contribution base units (CBUs) of both employers were considered together in order to determine the amount of withdrawal liability</u>**. [*Feldman Decl.* ¶8] [*Trento MSJ Decl.*, Ex. I].

This is not a situation where the withdrawal liability was only calculated as to A Plus, and where Plaintiffs are seeking to impose the liability of A Plus on DLC. <u>This liability belongs to DLC as much as it belongs to A Plus</u>. If DLC disagreed with the calculation of its liability (where the Plan combined its contribution history with that of A Plus), it had an obligation to arbitrate that issue, since "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia,* 830 F.2d 1241, 1250 (3d Cir. 1987).  DLC failed to initiate arbitration, and cannot now argue that it is not responsible for the liability imposed.

P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and Reply.docx

**B.  The Definition of an Employer**

In their respective answers, both A Plus and DLC each admitted being an "…employer within the meaning of ERISA §3(5), 29 U.S.C. §1002(5) and National Labor Relations Act ("NLRA") §2(2), 29 U.S.C. §152(2)…" [*See* Declaration of Matthew P. Minser In Support of Motion for Summary Judgment ("Minser MSJ Decl."), [Dkt. No.44], ¶¶ 17-18]; [*Id.*, Exs. A-C, ¶¶ 3, 5.]

In addition, the facts also clearly establish that A Plus and DLC are employers for purposes of ERISA and the MPPAA. "[M]any courts have held that the term 'employer' means 'a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants.'" *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 851 (9th Cir. 2010).  "ERISA's definition of an 'employer' encompasses an entity making contributions to a pension plan, and all 'trades and businesses' that are under 'common control' along with that entity. 29 U.S.C.A. § 1301(b)(1)." *Carpenters Pension Trust Fund for N. Cal. v. Walker*, 2014 U.S. Dist. LEXIS 53777, *13 (C.D. Cal. Apr. 17 2014). Both A Plus and DLC were signatory employers that made contributions to the Trust Fund. [*Trento MSJ Decl.* ¶¶ 6, 7]; [*Decl. of Steve Hay* (Dkt. #48), ¶4]; [*Decl. of Rodney Lawley* (Dkt. #53), ¶5]

Besides having admitted being Employers, under all relevant meanings of "employer," Defendants A Plus and DLC both indisputably meet the definition, as both contributed to Plaintiffs' Plan. Thus, there is no genuine issue as to the fact that both of these defendants were employers for withdrawal liability purposes.

**C.  A Plus and DLC's Status as a Single Employer Must Be Arbitrated**

In order to contest the existence or the amount of withdrawal liability, Defendants were required to follow the procedures set forth in ERISA § 4219(b)(2)(A),  ERISA § 4221(a)(1)(A) , and PBGC Reg. § 4221.3(d) respectively, which allowed Defendants to timely request review and to timely initiate arbitration.

To timely request review, within 90 days of receiving the Assessment, Defendants were required to request that the Plan review "any specific matter relating to the determination of the employer's liability and the schedule of payments." ERISA § 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A).

1  Defendants failed to request review and therefore did not satisfy the first requirement in order to contest

2  the withdrawal liability. *See Allyn, supra,* at 506-507.

3        If the employer fails to initiate arbitration, it waives any challenges to the existence and amount

4  of its liability. ERISA § 4221(b)(1), 29 U.S.C. § 1401(b)(1) , provides: "If no arbitration proceeding has

5  been initiated […] the amounts demanded by the plan sponsor under section 4219(b)(1) shall be due and

6  owing on the schedule set forth by the plan sponsor."  Defenses are waived and withdrawal liability

7  assessments are binding if arbitration is not initiated.  *Pension Trust Fund for Operating Eng'rs, et al. v.*

8  *Hillsdale Rock Co., Inc*., 2011 U.S. Dist. LEXIS 103553 at *5 (N.D. Cal. Aug. 19, 2011); *Bd. of Trs. of*

9  *the W. Conf. of Teamsters Pension Trust Fund v. Az.-Pac. Tank Lines*, 1983 U.S. Dist. LEXIS 12709, at

10  *4 (N.D. Cal. Oct. 14, 1983).

11      **D.  The Case Law Cited by DLC is Inapposite**

12        Defendant DLC mischaracterizes the novel argument brought forth in this matter. Again

13  Plaintiffs concede that there is abundant authority in most Circuits, including the Ninth Circuit, that the

14  issue of whether or not an entity ever was an employer (so that withdrawal liability may be imposed on

15  it) can be determined by the Court. Citing cases to that effect, DLC invites the Court to determine

16  whether the Trust Fund properly assessed A Plus and DLC as a controlled group. However, none of

17  those cases assist DLC in evading the consequences of its failure to initiate the mandatory withdrawal

18  liability arbitration.

19        DLC cites three cases:  *Galletti Concrete*, *Tractor Equipment Sales,* and *Giacalone Electrical*

20  *Services, Inc.*  in its attempt to spark a "gotcha" moment since two cases involves the same Plaintiff and

21  the same firm as Counsel, and the other case involves a different Plaintiff, with the same firm as

22  counsel. *Pension Plan for Pension Trust Fund v. Galletti Concrete, Inc.,* 2013 U.S. Dist. LEXIS 134367

23  *; 2013 WL 5289017 (N.D. Cal. 2013); *Auto. Indus. Pension Trust Fund v. Tractor Equip. Sales, Inc.,*

24  73 F. Supp. 3d 1173 (N.D. Cal. 2014); *Pension Plan for Pension Trust Fund for Operating Eng'rs v.*

25  *Giacalone Elec. Servs., Inc.,* LEXIS 84140; 2015 WL 3956143 (N.D. Cal. 2015).

26        In *Galletti*, the assessment was based on the complete withdrawal of formerly participating

27  employer Galletti & Sons, Inc. (who was not a party to the action). *Galletti* at 2, 6 [*See* Supplemental

28

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION AND REPLY**
**Case No. 16-cv-004568-CW**

Declaration of Matthew P. Minser ("Minser Supp. Decl.") filed concurrently herewith, Ex. A, ¶¶ 14-16.] As Galletti & Sons, Inc. was in bankruptcy, Plaintiffs alleged that Galletti Concrete, Inc. and Galletti Properties, LLC were also responsible for Galletti & Sons, Inc.'s liability as controlled group members. *Galletti* at 2-3  The case is different from the present matter because Galletti & Sons, Inc., the contributing employer who actually withdrew (and who was the underlying subject of the assessment), was not a party to the litigation. *Id.* The named defendants were never alleged to have contributed to the Pension Plan, therefore they would have had no CBUs to include in calculating the withdrawal liability. [Minser Supp. Decl., Ex. A, ¶¶ 14-16.]

In *Tractor Equipment Sales*, the signatory employer who withdrew was Tractor Equipment Sales, Inc. *Tractor Equipment* at 3 [Minser Supp. Decl., Ex. B.] The owners of Tractor Equipment Sales, a husband and wife, also owned several pieces of real property which were rented out for income. *Tractor Equipment* at 4. Plaintiffs attempted to characterize the rental property as a trade or business, and thus place the owners of the rental property in the controlled group with Tractor Equipment Sales, Inc. the withdrawing employer. *Tractor Equipment* at 12. Again, the common owners and their rental property business were not the assessed employer (and therefore would have had no CBUs to consider in calculating the withdrawal liability). *Tractor Equipment* at 3 [Minser Supp. Decl., Ex. B.] As Plaintiffs were attempting to classify the leasing business as a controlled group member, without it ever having previously been considered an "employer" (since the leasing business never contributed to the Plan), that dispute was proper in the District Court. *Auto. Indus. Pension Trust Fund v. Tractor Equip. Sales, Inc.*, 73 F. Supp. 3d 1173, 1180.

Finally, in *Giacalone Electrical Services*, complete withdrawal liability was assessed against Giacalone Electrical Services, Inc. only. *Giacalone* at 2 [Minser Supp. Decl., Ex. C, pp. 24-25.] Plaintiffs requested that the Court find a rental property to be a trade or business under common control with Giacalone Electrical Services, Inc., the withdrawing employer, thus placing the rental property (and the individual owners) within the controlled group with the withdrawing Employer. *Giacalone* at pp. 6-7. Again, the rental property was not the contributing employer who was assessed the withdrawal liability. *Giacalone* at 2] [Minser Supp. Decl., Ex. C, ¶¶ 24-25.] The rental property again was a mere

7

1   "purported controlled group member." Thus, in relying on those cited cases, DLC fails to establish that

2   the Plaintiffs are not entitled to judgment as a matter of law.

3   **III.   DLC'S CONTINUING STATUS AS AN EMPLOYER DOES NOT PRECLUDE A**
        **JUDGMENT IN PLAINTIFFS' FAVOR;  STANDING ON ITS OWN, DLC WOULD**
4       **HAVE  SIGNIFICANT WITHDRAWAL LIABILITY TO PLAINTIFFS**

5           DLC contends that it can have no partial withdrawal liability because it "remains obligated to

6   contribute to the Plan and has been doing so. …" [DLC Opposition, Dkt. #46 at pp. 5-6]. However, as

7   DLC admits, it was assessed a partial withdrawal liability based on a 70% contribution decline. Under

8   ERISA § 4205(b), 29 U.S.C. § 1385(b), a 70% contribution decline occurs when an employer's

9   contribution base units during a three year testing period do not exceed 30% of the employer's average

10  contribution base units for the two plan years in which the employer's CBUs were the highest within the

11  five plan years immediately preceding the beginning of the three year testing period. There is no

12  requirement that an employer completely withdraw from a Plan in order to have a 70%-decline partial

13  withdrawal. To the contrary, a 70% partial withdrawal is based on the level of the employer's continuing

14  obligation. ERISA § 4205(b), 29 U.S.C. § 1385(b). )

15          Whether DLC's contribution history was properly combined with A Plus was an issue for

16  arbitration. Nevertheless, for  informational purposes only (at this time) Plaintiffs requested that their

17  actuary, Horizon, review DLC's CBU history and calculate whether it is liable for any withdrawal

18  liability on its own, without it being included in the controlled group with A Plus.

19          Plaintiffs' actuary concluded that DLC had partial withdrawals based on a 70-percent decline for

20  the years 2011, 2012, 2013, 2014, and 2015. The total principal withdrawal liability for DLC alone

21  totals $504,096.00. [Minser Supp. Decl., ¶6; Ex. E]. Therefore, the fact that DLC continues to be a

22  contributing employer does not establish that it could not have had any partial withdrawal liability.

23  **IV.   DLC'S FRAUD ARGUMENT HAS NO MERIT**

24          DLC argues that Plaintiffs' pursuit of this action is "tantamount to perpetuating fraud on this

25  Court." Plaintiffs believe that DLC's argument again stems from its misunderstanding of the underlying

26  issue in this case, as explained above, that DLC has always been treated, since the assessment, as an

27  employer along with  A  Plus, and that DLC's contribution history contributes to the underlying

28

1  assessment in this matter. Again, DLC is not merely a purported controlled group member. It is the

2  assessed employer, along with A Plus.

3       Despite any information provided to Plaintiffs since the outset of this action, the fact remains that

4  DLC was required to raise its dispute of the withdrawal liability assessment in arbitration. DLC's failure

5  to do so waived its ability to raise the issue in the underlying action. Any information provided by DLC

6  during the litigation of this case does not change this fact.

7  **V.    THE LAWLEY ENTITIES' BANKRUPTCY**

8       **A.  California Corporations A Plus Materials Recycling, Inc. and Mr. Trucker, Inc. Did**

9           **Not File for Bankruptcy**

10       The Chapter 7 Bankruptcy Petition referenced by the Lawley Entities was filed by Rodney Ray

11  Lawley and Penny Ann Lawley, dba Mr. Trucker, Inc, A Plus Readmix, Inc., and A Plus Materials

12  Recycling, Inc. [Pledger Decl. (Dkt. #52), Ex. A.] In the Bankruptcy Petition, on page one, the filers

13  indicated "individual" under "Type of Debtor." Defendants A Plus Materials Recycling, Inc. and Mr.

14  Trucker, Inc. are corporations. Defendants did not provide any evidence that either corporate entity ever

15  filed for bankruptcy.

16       **B.  Corporations Do Not Receive a "Discharge" in Chapter 7 Bankruptcy Proceedings**

17       The Bankruptcy Code specifically provides that corporations do not receive a discharge of their

18  debts through bankruptcy proceedings. Section 727 explicitly provides:   "The court shall grant the

19  debtor a discharge unless . . . the debtor is not an individual." 11 U.S.C. § 727(a)(1).   **"Partnerships and**

20  **corporations may not discharge their debts in a liquidation proceeding under Chapter 7 of the**

21  **Code**. *See Collier on Bankruptcy* at 727-7 -- 727-9  [*379]  (15th ed.) ("Under the Code, a corporation

22  or partnership that is in a chapter 7 proceeding is liquidated only and never receives a discharge." Collier

23  at 727-8.) *NLRB v. Better Bldg. Supply Corp.*, 837 F.2d 377, 378-379 (9th Cir. 1988) (emphasis added).

24       **C.  None of the Amounts Sought Herein Were Discharged by the Bankruptcy Court**

25       The Lawley Entities' Brief states, "Here, the bankruptcy filing occurred after withdrawal and

26  before the filing of the Complaint and liability to the Fund was specifically referred to in the bankruptcy

27  proceedings, Plaintiffs made claims, and the debtors were discharged." [Lawley Entities Opposition,

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION
  AND REPLY**
**Case No. 16-cv-004568-CW**                                   P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and
                                                               Reply.docx

1  Dkt. #50 at 16:17-21.] As noted above, the assessment that is the subject of this matter was not sent out

2  until February 6, 2015. [*Trento MSJ Decl*. ¶14; Ex. I.] The discharge referenced in Defendants' brief is

3  dated June 20, 2013. [*Pledger Decl*. ¶8.] Plaintiffs' claim in this action could not have been discharged

4  nearly two years before the claim was ever made (via the February 6, 2015 assessment). The Lawley

5  Entities again appear to be confused between the August 31, 2011 assessment (for complete withdrawal

6  liability - which was rescinded) and the February 6, 2015 assessment (for partial withdrawal liability -

7  which is the subject of this action).

8  **VI.    IMPROPER NOTICE ALLEGED BY THE LAWLEY ENTITIES**

9         Under ERISA § 4219(b), 29 U.S.C. § 1399(b), the Trust Fund must notify an employer of the

10  amount of its withdrawal liability, the schedule for payments, and demand payment. That was done by

11  the assessment letter sent to A Plus and DLC in February 2015. DLC admittedly received the assessment

12  and did not respond to it. [*Hay Decl*. (Dkt. #48), ¶6]; [*Minser MSJ Decl*; Ex. C, ¶20]. However, the

13  Lawley Entities, including A Plus, contend that they did not receive the assessment. Instead, they

14  contend that they did not learn of the assessment until they received the acceleration notice of April 29,

15  2016. They argue that the acceleration notice is insufficient and, although Plaintiffs disagree, there is no

16  question that the Lawley Entities received the required notice, at the latest, on service of the complaint

17  in this action.

18         Case law has held that service of the complaint constitutes notice of the assessment. *See

19  Northwest Adm'rs, Inc. v. Northern Distrib., LLC*, 2011 U.S. Dist. LEXIS 7343, at *4-5 (W.D. Wash.

20  Jan. 26, 2011) Likewise, Courts have held that where employer received notice by service of the

21  withdrawal liability complaint and did not timely initiate arbitration, all amounts assessed were due and

22  owing. *Bd. of Trs. v. Northern Steel Corp*., 657 F. Supp. 2d 155, 158-159 (D.D.C. 2009).; *See also

23  Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir. N.Y. 1990).

24         As A Plus never initiated arbitration despite receiving notice of its assessed liability by service of

25  process in this action, it has waived its opportunity to dispute the fact or amount of its liability. Whether

26  the other Lawley Entities were also required to arbitrate their liability as controlled group members is

27  discussed below.

28
                                                  10
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION
  AND REPLY**

VII.  **CONTROLLED GROUP STATUS OF THE LAWLEY ENTITIES**

   **A.  A Plus and DLC**

   In the brief by the Lawley Entities, the Lawley Entities dispute controlled group status as to A Plus and DLC. As discussed above, A Plus and DLC are together the withdrawing employer, based on a 70% decline. There is no assessment (in its present state) without either A Plus or DLC, since their CBUs were combined in calculating the assessment. [*Feldman Decl.* ¶8] [*Trento MSJ Decl.*, Ex. I]. Any dispute as to the determination of this liability (including the alleged ownership interests of A Plus and DLC) had to go to arbitration. As arbitration was never initiated in this matter, any dispute as to whether A Plus or DLC were properly included in the assessment is waived.

   **B.  Mr. Trucker, Inc.**

   As set forth in Plaintiffs' First Amended Complaint, Mr. Trucker, Inc. is a suspended California Corporation. [*Minser MSJ Decl.*, Ex. A, ¶7.] In its answer, Mr. Trucker admitted being a suspended California Corporation. [*Id.*, Ex. B, ¶7.] Mr. Trucker remains Secretary of State and Franchise Tax Board suspended. [*Minser Supp. Decl.*, ¶5; Ex. D.]

   Suspended corporations are not eligible to defend themselves in court actions. "A corporation which has its powers suspended pursuant to these sections lacks the legal capacity to prosecute or defend a civil action during its suspension. (*See ABA Recovery Services, Inc. v. Konold* (1988) 198 Cal.App.3d 720, 724 [244 Cal.Rptr. 27]; *Schwartz v. Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 188 [335 P.2d 487].)" *Sade Shoe Co. v. Oschin & Snyder*, 217 Cal. App. 3d 1509, 1512-1513 (1990).   A "corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes." *Reed v. Norman* 48 Cal.2d 338, 343 (1957).

   **C.  AtoZ Repair and Remodel, LLC**

   In the Lawley Entities' Answer, Defendants admitted that Rodney Lawley owned 80% or more of AtoZ Repair and Remodel LLC's voting shares at all times relevant to this action. [*Minser MSJ Decl.*, Ex. B, ¶10.] Despite having never amended the answer, AtoZ now attempts to introduce evidence in contravention of its Answer.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION AND REPLY
Case No. 16-cv-004568-CW

P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and Reply.docx

Rodney Lawley admits that at its formation in 2012, according to the Company Agreement, AtoZ Repair and Remodel, LLC was owned solely by Rodney and Penny Lawley (until the alleged divesture of 50% of the company to the children of Rodney and Penny Lawley). [*See Lawley Decl*. ¶¶ 7-8.] At least from March 26, 2012 to March 31, 2012, AtoZ was owned by Rodney and Penny Lawley. [*Id*.] A Plus was admittedly owned by the Rodney and Penny Lawley Family Trust during that same time period (as imputed through ownership by their trust). [*Id*. ¶¶ 4-5.] Therefore, Rodney Lawley has effectively admitted that at *one time* (for five days in March 2012), AtoZ was under the same ownership as Defendant A Plus.

This is the exact situation described by Judge Illston in *Galletti*. "[I]f the parties dispute whether an entity has ceased to be an 'employer' under the MPPAA, rather than whether the entity has ever become an employer, that dispute must be resolved in arbitration…" *Galletti, supra*. Since AtoZ admitted it was under common ownership, the question is not whether AtoZ was *ever* an employer for purposes of withdrawal liability, but rather the question is whether AtoZ <u>ceased to be an employer</u>. This is a question that had to be taken to arbitration. As AtoZ failed to initiate arbitration, they are foreclosed from raising the argument now.

**D.  Lawley Bros, LLC**

Plaintiffs acknowledge that based on the evidence provided, Lawley Bros, LLC is not in the controlled group with the assessed employer (A Plus/DLC). Lawley Bros, LLC was not named in Plaintiffs' Motion for Summary Judgment. Therefore, Plaintiffs consent to a dismissal of Lawley Bros, LLC in this matter, and will be requesting a dismissal of Lawley Bros, LLC prior to the July 10, 2018 hearing on the Parties' dispositive motions.

**E.  Pennrod Capital, LLC**

Plaintiffs acknowledge that based on the evidence provided, Pennrod Capital, LLC is not in the controlled group with the assessed employer (A Plus/DLC). Lawley Bros, LLC was not named in Plaintiffs' Motion for Summary Judgment. Therefore, Plaintiffs consent to a dismissal of Pennrod Capital, LLC in this matter, and will be requesting a dismissal of Pennrod Capital, LLC prior to the July 10, 2018 hearing on the Parties' dispositive motions.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION AND REPLY**
**Case No. 16-cv-004568-CW**

P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and Reply.docx

1

## VIII.  DAMAGES SOUGHT

2

### A.  Principal Withdrawal Liability, Interest, and Liquidated Damages

3    As set forth herein, and in Plaintiffs' Opening Brief, Plaintiffs are entitled to judgment of

4    principal withdrawal liability, interest, and liquidated damages against employers A Plus Materials, and

5    Don Lawley Company, and against controlled group members Mr. Trucker and AtoZ Repair and

6    Remodel. As explained above, no amounts claimed herein have been discharged by bankruptcy to date.

7

### B.  Attorneys' Fees and Costs

8    Plaintiffs are entitled to their attorneys' fees and costs, as requested in their Opening Brief.

9    Judges of the Northern District have regularly found Plaintiff's Counsel's attorneys' fees, including

10   paralegal fees reasonable. Exemplars are as follows: *District Council 16 Northern California Health*

11   *and Welfare Trust Fund, et al. v. Northside Installations, Inc.* 17-02892 KAW WHA; *District Council*

12   *16 Northern California Health and Welfare Trust Fund, et al. v. G Flor, Inc.* 16-0447 KAW YGR;

13   *Operating Engineers Health and Welfare Trust Fund for Northern California, et al. v. Kino*

14   *Aggregates, Inc.* 16-02795 DMR HSG;  *Operating Engineers Health and Welfare Trust Fund for*

15   *Northern California, et al. v. CEM Builders, Inc. et al.* – 17-03524 EDL JD; *District Council 16*

16   *Northern California Health and Welfare Trust Fund, et al. v. Norman Hiawatha Linsy et al.* 16-03884

17   JSC JST; *District Council 16 Northern California Health and Welfare Trust Fund, et al. v. G&S*

18   *Drywall, Inc.* 17-02786 EDL MMC; *Russell E. Burns et al. v. Empire Engineering & Construction, Inc.*

19   *et al.  15-CV-02753 DMR RS*. Plaintiff's Counsel relied the same method of presentation in requesting

20   their attorneys' fees in all but two of these cases. Finally, Plaintiffs are not opposed to producing their

21   billing records, if requested by the Court.

22

## IX.   OBJECTIONS TO DECLARATIONS

23   As Plaintiffs have filed a Motion for Summary Judgment, the majority of the Defendants'

24   objections are inappropriate, specifically because most of the objections are not on dispositive facts.

25   "[W]hen evidence is not presented in an admissible form in the context of a motion for summary

26   judgment, *but it may be presented in an admissible form at trial*, a court may still consider that

27   evidence." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION AND REPLY**
**Case No. 16-cv-004568-CW**

P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and Reply.docx

**A.  M. Minser Declaration**

DLC objects to the Minser declaration, stating that Mr. Minser lacks the first-hand knowledge to testify as to the reason for the Plaintiffs' rescission of the 2011 assessment. [DLC Opposition, Dkt. #46 at 12:24-28]. The Lawley Entities make similar objections. [Lawley Entities Opposition, Dkt. #50 at pp. 18-19:9-22; 1-3.] Plaintiffs do not introduce the basis for the 2011 recession as *evidence* of A Plus and DLC being a controlled group (or as evidence of any other dispositive fact). Rather, Plaintiffs are simply setting forth their basis for the 2015 assessment, where A Plus and DLC were treated as a single employer in the assessment, as a background or contextual fact.

The Lawley Entities also object to paragraphs 19-21 of the Minser declaration, which states that the Defendants did not request review of the withdrawal liability assessment, did not request arbitration, and have made no payment. These objections are immaterial, because no Defendants have alleged in their moving papers that they did request review or arbitration, or that any payment of the withdrawal liability was made. Moreover, the Lawley Entities admitted neither requesting review nor making any payment in their respective Answers. [*Minser MSJ Decl*., Ex. A, ¶¶ 21-22; Ex. B ¶¶ 21-22; Ex. C ¶¶ 21-22].

**B.  G. Trento Declaration**

DLC objects to the Trento declaration, stating that "…Mr. Trento's declaration, as a 'Fund Manager' supervising operations on behalf of the Trust Fund, is wholly irrelevant as to the issues before the court…Specifically Paragraph 5 related to who signed the Collective Bargaining Agreement is simply not relevant to any issue in this litigation or motion. (Fed R. Evid. 401 and 402)." [DLC Opposition, Dkt. #46 at pg. 11:24-28.] The Lawley Entities make a similar objection in their brief. [Lawley Entities Opposition, Dkt. #50 at pg. 19:13-18.] DLC and the Lawley Entities ignore the fact that DLC and A Plus having signed  Bargaining Agreements obligating them to contribute to the Plaintiff Pension Plan is one of the bases qualifying A Plus and DLC as "employers" for purposes of ERISA. Therefore, the act of signing the Collective Bargaining Agreement is absolutely relevant to this action. This is not dispositive, since DLC and A Plus admit being employers. The case law analyzing the definition of an employer is discussed above, and in Plaintiffs' Opening Brief.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION AND REPLY**
**Case No. 16-cv-004568-CW**

P:\CLIENTS\OE3WL\CASES\A Plus Materials\PLEADINGS\MSJ\Response\MSJ - Ps Response and Reply.docx

1

### C.  M. Stafford Declaration

2

Plaintiffs request that the Court overrule the objections by the Lawley Entities to the M. Stafford

3

Declaration. As described above in Section VIII(B), Judges of this Court have relied on nearly identical

4

declarations of Plaintiffs' Counsel in finding their attorneys' fees reasonable.

5

### X.   <u>CONCLUSION</u>

6

Plaintiffs request that the Court grant their Motion for Summary Judgment in its entirety, and

7

deny the cross-motions of Defendants Don Lawley Company, and the Lawley Entities. As the

8

withdrawal liability assessment was based on the CBUs of both Defendant A Plus and Defendant Don

9

Lawley, any dispute of the assessment was required to go to arbitration. As no Defendants initiated

10

arbitration, any dispute of the arbitration cannot now be raised in litigation. Likewise, Defendant AtoZ

11

was also required to raise any dispute of its controlled group status in arbitration, since it admittedly was

12

under common control with Defendant A Plus, albeit for a short period of time.

13

In addition, Defendant Mr. Trucker is Secretary of State and Franchise Tax Board suspended.

14

Therefore it is not eligible to defend itself in this action. Finally, the personal bankruptcy of Rodney and

15

Penny Lawley has no bearing on this action, since the discharge occurred before Plaintiffs' assessment,

16

and since Rodney and Penny Lawley are not named defendants herein. No evidence has been provided

17

that any of the corporate entities named as Defendants herein ever filed for bankruptcy. Moreover, case

18

law holds that corporations do not receive a discharge in Chapter 7 proceedings. Finally, the evidentiary

19

objections made by the Defendants are inappropriate, and are not on dispositive issues. Therefore,

20

Plaintiffs' Motion should be granted in full, as requested, and the Defendants' cross-motions should be

21

denied.

22

23

Dated: June 4, 2018                              SALTZMAN & JOHNSON LAW
                                                 CORPORATION

24

                                    By: _____/S/_____

25

                                          Matthew P. Minser
                                          Attorneys for Plaintiffs

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO CROSS-MOTION
  AND REPLY
Case No. 16-cv-004568-CW