1
RONALD W. BROWN, ESQ. (SBN 107340)
LISA V. RYAN, ESQ. (SBN 217802)

2
COOK BROWN, LLP
555 CAPITOL MALL, SUITE 425

3
SACRAMENTO, CALIFORNIA  95814
TELEPHONE NO.:  916-442-3100

4
FACSIMILE NO.:  916-442-4227
EMAIL:  rbrown@cookbrown.com

5
        lryan@cookbrown.com

6
Attorneys for Defendant DON LAWLEY
COMPANY, INC.

7

8

9
UNITED STATES DISTRICT COURT

10
NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

11

| | |
|---|---|
| 12 PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS; 13 RICHARD PIOMBO and RUSSELL E. BURNS, As Trustees, 14 15         Plaintiffs,    v. 16 A PLUS MATERIALS RECYCLING, INC., a dissolved California corporation; DON 17 LAWLEY COMPANY, INC., a California corporation; MR. TRUCKER, a suspended 18 California corporation; ATOZ REPAIR AND REMODEL, LLC a Texas limited liability 19 company; LAWLEY BROS., LLC, a California limited liability company; 20 PENNROD CAPITAL, LLC, an Arizona limited liability company; and DOES 1-10, 21         Defendants. 22 | Case No.  4:16-CV-04568-CW **DEFENDANT DON LAWLEY COMPANY, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** Date:     July 10, 2018 Time:     2:30 P.M. Crtrm.:   2 Action Filed:   August 11, 2016 FAC Filed:    August 28, 2016 |

23
## I.    INTRODUCTION

24
    Once again, Plaintiffs try to distract the court from the key and only real issue in this

25
case – whether A Plus and Don Lawley Company, Inc. ("DLC") are members of the same

26
common control group.  If they are, Plaintiffs win.  If they are not, Defendants must win.

27
How could an issue be more central and controlling?  Since common control group

28
analysis is the controlling issue, the authorities all hold that the issue is subject to judicial

1  determination and is not waived by the failure to arbitrate.

2  **II.  ARGUMENT**

3  **A.  The Only Issue is this Case is Whether DLC is Part of A Plus' Common Control Group**

4

5  Plaintiffs try to make much of DLC's admission that it is an ERISA "employer."

6  (Paragraph II. B in Plaintiffs' opposition.)  But, simply constituting an ERISA employer is

7  not determinative of any issue in controversy in this case.  An ERISA "employer" is "a

8  person who is obligated to contribute to the plan either as a direct employer or in the

9  interest of an employer of the plan's participants."[1]  In other words, any construction

10  company bound to the Operating Engineers Local 3 CBA would constitute an ERISA

11  "employer."  But, that does not answer the question of whether the "employer" has

12  withdrawn from the plan, subjecting it to withdrawal liability.  With respect to DLC, that

13  determination can be made only if it is first determined that DLC is part of A Plus'

14  common control group.  If it is part of A Plus' common control group, then it would be

15  proper to find that the A Plus/DLC single employer was subject to partial withdrawal

16  liability and that DLC's contribution base units would be combined with those of A Plus to

17  calculate their withdrawal liability.

18  But, if DLC is not part of A Plus' common control group, then it is also not subject to

19  any assessment of withdrawal liability since it remains a contributing employer to the plan.

20  (See argument at part II. <u>B</u> of this brief.)  Accordingly, it is clear that the one and only key

21  issue is this case is whether or not DLC is part of A Plus' common control group.  If so,

22  DLC is jointly liable with A Plus for the withdrawal liability assessment.  If not, DLC has

23

24  [1] See *Korea Shipping Corp. v. N.Y. Shipping Ass'n-Int'l Longshoremen's Ass'n Pension Trust
25  Fund,* 880 F.2d 1531, 1537 (2d Cir. 1989); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n
Inc.-Int'l Longshoreman's Ass'n, AFL-CIO Pension Plan and Trust*, 896 F.2d 1330, 1343 (11th
26  Cir. 1990); *Seaway Port. Auth. of Duluth v. Duluth-Superior ILA Marine Ass'n Restated Pension
Plan,* 920 F.2d 503, 507 (9th Cir. 1990); *Cent. States, Se. and Sw. Areas Pension Fund v. Cent.
27  Transp., Inc.,* 85 F.3d 1282, 1287 (7th Cir. 1996); *Cent. States, Se. and Sw. Areas Pension Fund v.
28  Int'l Comfort Prods., LLC,* 585 F.3d 281, 284-85 (6th Cir. 2009).

**DON LAWLEY'S REPLY TO OPPOSITION TO MSJ**
Case No.  4:16-CV-04568-CW

1    no liability.  And, in light of the unanimous case authorities cited in DLC's opening brief,

2    that core issue of common control group membership is subject to judicial determination,

3    and is not waived by virtue of DLC's failure to initiate arbitration.

4         Plaintiffs' citation to *Trs. of the Suburban Teamsters of N. Ill. Pension Fund v.*

5    *Bolingbrook Redi-Mix Co.*, 2016 U.S. Dist. Lexis 40531 in its opposition brief actually

6    supports DLC's case.  The court's hypothetical involved assessment of a North Dakota

7    farmer with withdrawal liability based on its alleged status as a common control group

8    member of a New York construction company.  The court found that it would be grossly

9    unfair and contrary to MPPAA to prohibit the farmer from defending against the common

10   control group finding judicially since it failed to arbitrate the issue.

11        Adjust the hypothetical slightly to provide that another New York construction

12   company with no ownership relationship with the assessed employer is also assessed

13   withdrawal liability based on its alleged common ownership with the assessed employer.

14   If the unrelated company failed to challenge the assessment against it, it would be liable

15   even though the statute does not apply to it.  "This would be an absurd and unjust result."

16   *Id*.

17        This is what has happened here.  Plaintiffs purported to assess partial withdrawal

18   liability on DLC based solely on Plaintiffs' (incorrect) belief that DLC was a member of

19   withdrawn employer A Plus' common control group.  DLC knew there was no common

20   ownership between A Plus and DLC, so it did not seek to arbitrate the matter and incur

21   hefty legal fees.  At this point it would be "an absurd and unjust result" to deny DLC the

22   right to contest its alleged status as a member of A Plus' common control group, since all

23   the evidence shows that there was absolutely no common ownership between A Plus and

24   DLC, particularly in light of all the contrary authority in the Northern District.

25        The *Bolingbrook Redi-Mix* court also observed that depriving non-members of a

26   common control group the right to judicial determination of their status, "would

27   encourage funds to try to game that system, particularly by preying on those who lack the

28   resources or sophistication to understand a complex legal issue."  This is exactly what is

---

**DON LAWLEY'S REPLY TO OPPOSITION TO MSJ**
Case No.  4:16-CV-04568-CW

O:\94928\9827\Pld\DLC's MSJ-Reply to Opp.docx                3

1   going on here.  Plaintiffs have irrefutable evidence that A Plus and DLC have no common

2   ownership and are not members of the same common control group.  Even so, they try to

3   prey on DLC's lack of sophistication by seeking to hold it liable for A Plus' alleged

4   withdrawal from the plan, to the tune of over $1 million.  Since A Plus and its alleged

5   common control members are out of business and presumably judgment proof, Plaintiffs

6   would seek full recovery from DLC, who clearly has no liability under the law.  "Such a

7   result is not required by the MPPAA or Seventh Circuit case law."  *Bolingbrook Redi-Mix,*

8   *supra.*

9        To summarize, the only issue in this case is whether DLC is part of A Plus' common

10  control group.  If it is, Plaintiffs win.  If not, DLC wins.  Common control group

11  membership is subject to judicial determination, and the court is urged to so find.

12  **B.      DLC, Standing Alone, has not incurred a Partial Withdrawal**

13

14       Plaintiffs are dead wrong in their assertion that DLC, standing alone, would have

     incurred partial withdrawal liability (Paragraph III in Plaintiffs' opposition).  Under ERISA
15
     § 4208 (d)(1), 29 U.S.C. § 1388(d)(1), partial withdrawal liability may be assessed against a
16
     construction industry employer <u>only</u> if the employer continues performing covered work
17
     on a non-union basis.  Specifically, § 4208(d)(1), 29 USC 1388(d)(1), provides that "An
18
     employer to whom section 1383(b) of this title (relating to the building and construction
19
     industry) applies is liable for a partial withdrawal <u>only</u> if the employer's obligation to
20
     contribute under the plan is continued for no more than an insubstantial portion of its
21
     work in the craft and area jurisdiction of the collective bargaining agreement of the type for
22
     which contributions are required."  (Emphasis added.)  Thus, "a building and construction
23
     employer cannot be liable for partial withdrawal unless the reason for the decline is a
24
     substantial use of non-union workers (and, thus, non-covered workers) within the
25
     jurisdiction of the collective bargaining agreement."  *Ratheon Company v. Central States,*
26
     *Southwest and Southwest Areas Pension Fund*, 1989 WL 117919, Slip. Op. at p.3 (N.D. Ill.
27
     1989).  In this case, there can be no question that DLC is a construction industry employer
28

---

1 since "substantially all of the employees with respect to whom the employer has an

2 obligation to contribute to the plan perform work in the building and construction

3 industry." ERISA § 4203(b)(1)(A). The decline in contributions to the Plan by DLC was

4 based solely on the non-availability of work. At no time did the company perform covered

5 work by non-union employees. The company has remained bound to its CBA with

6 Operating Engineers Local 3 at all material times and has employed union operators on

7 every occasion where covered work was required to be performed. Accordingly it is

8 entitled to application of ERISA § 4208 (d)(1) and DLC, standing alone, cannot be assessed

9 with partial withdrawal liability.

10 **III.   CONCLUSION**

11      Based on the foregoing, as well as the points and authorities set forth in DLC's

12 opening brief, it can be seen that the <u>only</u> issue in this case is whether DLC is part of A

13 Plus' common control group. If so, Plaintiffs win. If not, DLC wins. And, the authorities

14 all uniformly provide that common control group membership is subject to judicial

15 determination and is not waived by the failure to arbitrate.

16      Furthermore, Plaintiffs' assertion that DLC, standing alone, is subject to partial

17 withdrawal liability is patently incorrect. DLC, as a construction industry employer, is

18 entitled to application of ERISA § 4208(d0(1), which provides that partial withdrawal

19 liability may only be assessed if the employer continues preforming covered work on a

20 non-union basis. That has not occurred, and certainly Plaintiffs have provided no evidence

21 to the contrary.

22      DLC is entitled to summary judgment in its favor, and the court is urged to so find.

23 DATED: June 18, 2018        COOK BROWN, LLP
24                      RONALD W. BROWN, ESQ.
                      LISA V. RYAN, ESQ.
25
26                   By:  /s/ Ronald W. Brown
                      Attorneys for Defendant DON LAWLEY
27                       COMPANY, Inc.

28