**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSION PLAN FOR PENSION TRUST FUND FOR OPERATING ENGINEERS; RICHARD PIOMBO AND RUSSEL E. BURNS, AS TRUSTEES, | No. 16-cv-4568 CW |
| Plaintiffs, | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | (Dkt. Nos. 42, 46 and 50) |
| A PLUS MATERIALS RECYCLING, INC., DON LAWLEY COMPANY, INC., MR. TRUCKER, ATOZ REPAIR AND REMODEL LLC, LAWLEY BROS., LLC AND PENNROD CAPITAL, LLC, | |
| Defendants. | |
| ════════════════════════════════/ | |

This case is about whether Defendants are liable to Plaintiffs under the multiemployer pension plan withdrawal provisions of the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1001-1461. Plaintiffs are the Pension Plan for Pension Trust Fund for Operating Engineers and two of its trustees, Richard Piombo and Russell E. Burns (collectively, the Plan). Defendants are six companies that the Plan alleges are jointly and severally liable for a partial withdrawal from the Plan. Now before the Court are three cross motions for summary judgment.

The Plan moves for summary judgment against all Defendants. Defendant Don Lawley Company (DLC) makes a cross motion for summary judgment against the Plan. The five other Defendants——A Plus Materials Recycling, Inc. (A Plus), Mr. Trucker, AtoZ Repair

United States District Court
For the Northern District of California

and Remodel, LLC (AtoZ), Lawley Bros., LLC and Pennrod Capital, LLC (collectively, the Lawley Entities)——also make a cross motion for summary judgment against the Plan.  The Court held a hearing on July 10, 2018.

For the reasons explained below, the Court denies the Plan's summary judgment motion, grants in part and denies in part DLC's cross motion, and denies the Lawley Entities' cross motion.  The Court also dismisses the Plan's amended complaint with leave to amend and stays the case pending arbitration.

BACKGROUND

I.   The Plan and its Participating Employers

The Plan is a multiemployer pension plan that collects contributions from participating employers under collective bargaining agreements and then distributes benefits to covered employees.  Decl. of Greg Trento ¶ 3.  Two Defendants are or were participants in the plan, DLC and A Plus.  Id. ¶¶ 4-7.

DLC is a demolition and excavation contractor that was incorporated by Don Lawley in 1990.  Decl. of Steve Hay ¶¶ 1-2.  When Don Lawley died in 2007, ownership transferred to a family trust benefiting his widow, Barbara Lawley.  Id. ¶ 2.  In August 2012, Steve Hay purchased all of DLC's stock from the trust.  Hay has been the sole shareholder of DLC ever since.  Id. ¶ 3.  DLC continues to make payments to the Plan but because it only has one remaining covered employee, its contributions have declined considerably in the last few years.  Hay Decl. ¶¶ 4-5; Supp. Decl. of Matthew P. Minser, Ex. E.; Trento Decl. ¶¶ 5, 7.

A Plus was a portable crushing and recycling business and it was incorporated in 1996.  Lawley Decl. ¶ 4, Ex. A.  Rodney Lawley

United States District Court
For the Northern District of California

was the only shareholder from the company's founding until November 2008, when his interest was transferred to "Rodney Lawley and Penny Ann Lawley, as Trustees of the Rodney and Penny Lawley Family Trust" (the Rodney and Penny Trust).[1]  Id. ¶ 4-5.  In 2010 A Plus shut down, terminating all operations and contributions to the Plan.  Decl. of Rodney Lawley ¶¶ 5; Trento Decl. ¶¶ 4, 6.  The Rodney and Penny Trust remained sole shareholder until A Plus was formally dissolved in 2012.  Lawley Decl. ¶¶ 4-5.  In their answer to the Plan's amended complaint, the Lawley Entities admitted that "at all relevant times, Rodney Lawley owned 80% or more of the voting shares" of A Plus.  Am. Compl. ¶ 4; Lawley Entities Answer ¶ 4.

II.  Related Entities

The Plan also sues four Defendants—Mr. Trucker, AtoZ, Lawley Bros. and Pennrod Capital—that never participated in the Plan but are allegedly liable because of their connections to DLC and A Plus.

Mr. Trucker was a California corporation that the state suspended in 2010.  Lawley Decl. ¶ 6, Ex. C.  Because it is suspended, Mr. Trucker may not exercise most "corporate powers, rights and privileges," including defending this lawsuit.  See Bourhis v. Lord, 56 Cal. 4th 320, 324 (2013) (citing Cal. Rev. & Tax. Code § 2301); see also Matter of Christian & Porter Aluminum Co., 584 F.2d 326, 331-32 (9th Cir. 1978) (suspended California corporations precluded from appealing adverse judgment).

---

[1] Penny Lawley is Rodney Lawley's wife.  Lawley Decl. ¶ 10 ("my wife Penny Lawley").

**United States District Court**
For the Northern District of California

Accordingly, Mr. Trucker has not responded to the complaint.  If the Plan wishes to pursue it, the Plan will eventually need to pursue default.

AtoZ was a limited liability company that was formed in March 2012, when the Texas Secretary of State issued a Certificate of Formation.  Lawley Decl. ¶ 7, Ex D.  The Certificate of Formation identified Rodney and Penny Lawley as the initial members.  Id.  A few days later, AtoZ executed a "Company Agreement" and issued four "Membership Certificates," each representing a twenty-five percent stake in the company.  The certificates were issued to Rodney Lawley, Penny Lawley and the couple's two children.  Lawley Decl. ¶ 8, Exs. E, F.  AtoZ was terminated in 2015.  Id. ¶ 9.  In their answer to the Plan's amended complaint, the Lawley Entities admitted that "at all relevant times, Rodney Lawley owned 80% or more of the voting shares" in AtoZ.  Am. Compl. ¶ 10; Lawley Entities ¶ 10.

In its motion papers, the Plan dropped its allegations as to Lawley Bros. and Pennrod Capital.  The Court accordingly dismisses the Plan's claims as to those two Defendants with prejudice.

III. Alleged Plan Withdrawals and Assessments

In 2011 the Plan assessed DLC, A Plus and Rodney Lawley as an individual for a complete withdrawal from the Plan.  Trento Decl. ¶ 10.  DLC and A Plus responded by denying that they had withdrawn, and the Plan later rescinded the assessment.  Id. ¶ 11.  About three years later, the Plan determined that DLC and A Plus had together partially withdrawn from the plan as of December 31, 2012.  Id. ¶ 13, Ex. H.  The Plan notified DLC, A Plus and others of that determination in 2015 and requested payment of more than

$1,000,000 (the 2015 Assessment).  Id. ¶ 14, Ex. I.  The Plan received no request for review of the 2015 Assessment, no request to initiate arbitration and, most importantly, no money.  Id. ¶¶ 18-20.  The Plan later sent an acceleration notice demanding the full withdrawal liability plus liquidated damages and interest.  Minser Decl. ¶ 11, Ex. D.  When that failed to produce the desired payments, the Plan commenced a civil action in this Court.

LEGAL STANDARD

I.    Summary Judgment Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which

facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  <u>Nissan</u>, 210 F.3d at 1105.  If the moving party produces such evidence, the

burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id.  This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

II.  ERISA Withdrawal Liability

Under ERISA as amended by the MPPAA, when an employer completely or partially withdraws from a multiemployer pension plan, the employer owes "withdrawal liability."  29 U.S.C. § 1381(a).  The plan sponsor must then determine the employer's withdrawal liability, notify the employer and collect payment. See id. §§ 1382; 1399(b)(1).  The plan's notice to the employer must state the amount of the liability, include a schedule for payments and demand payment in accordance with that schedule.  Id. § 1399(b)(1).

The amount of withdrawal liability is based on a plan's unfunded vested benefits allocable to the employer.  See id. § 1391(b).  The employer may request review of the plan's demand, but subject to exceptions not relevant here, the employer must begin paying shortly after the § 1399(b)(1) notice, notwithstanding a request for review or arbitration.  See id. § 1399(b)(2), (c)(2); Cent. States, Se. & Sw. Areas Pension Fund v. Wintz Properties, Inc., 155 F.3d 868, 872 (7th Cir. 1998) ("ERISA unequivocally establishes a pay now, arbitrate later scheme.") (internal quotation marks omitted).  For a time, either party may initiate arbitration, and the parties may jointly initiate

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

arbitration within 180 days of the plan's § 1399(b)(1) notice.  29

U.S.C. § 1401(a).  If no party requests arbitration, the

installments become "due and owing" in accordance with the

trustees' schedule.  Id. § 1401(b)(1).  If an employer has

defaulted on its obligation, a plan fiduciary may bring an action

to compel payment.  Id. § 1451(a).

Withdrawal liability can arise from either a complete

withdrawal or a partial withdrawal.  Complete withdrawal occurs

when an employer permanently ceases to have an obligation to

contribute under the plan or permanently ceases all covered

operations under the plan.  Id. § 1383(a).  Subject to

alternatives not relevant here, partial withdrawal occurs when

there is a seventy-percent or greater decline in an employer's

contribution base units (CBUs) (i.e., the number of weeks worked

by each eligible employee), as calculated through a complex

formula that considers the employer's CBUs over an eight-year

period.  See Raytheon Co. v. Cent. States, Se. & Sw. Areas Pension

Fund, No. 89-cv-1010, 1989 WL 117919, at *1 (N.D. Ill. 1989)

(citing 29 U.S.C. § 1385).

Whether the alleged withdrawal is complete or partial,

withdrawal liability may be assessed against not only the

withdrawing employer but also against all entities in a

"controlled group" with that employer.  A controlled group is

comprised of all "trades or businesses" that are under "common

control" with the withdrawing employer.  See 29 U.S.C. §

1301(b)(1).  The MPPAA treats controlled group members as "a

single employer."  Id.  As a result, "withdrawal liability may be

imposed against an entity other than the one obligated to

contribute to the pension plan." Auto. Indus. Pension Tr. Fund v. Tractor Equip. Sales, Inc., 73 F. Supp. 3d 1173, 1180 (N.D. Cal. 2014).

## DISCUSSION

The Plan's theory, as laid out in its amended complaint and summary judgment motion, is that DLC and A Plus together partially withdrew from the Plan.  The withdrawal was partial because, although A Plus is defunct, DLC is still operational and contributing to the Plan.  The Plan considered DLC's and A Plus's combined CBUs over an eight-year period and concluded that the decline in their cumulative contributions to the Plan triggered a partial withdrawal.  See Trento Decl. ¶ 13, Ex. H.  In other words, the Plan's 2015 Assessment assumed that DLC and A Plus formed a controlled group and that they could be treated as a single employer under the MPPAA.

The Plan argues that by failing to arbitrate the 2015 Assessment, DLC waived its right to contest whether it ever was part of a controlled group with A Plus.  The Plan asks the Court to rule that even if the 2015 Assessment was wrong on the controlled group issue, DLC is still liable.  The Plan also says that A Plus and the Lawley Entities formed their own controlled group, so if A Plus is liable for the DLC-A Plus partial withdrawal, so too are the other Lawley Entities.

For the reasons described below, however, the Court concludes that DLC did not waive its right to contest its controlled group status and that DLC and A Plus were not part of a controlled group.  Because it was improper for the Plan to assume that DLC and A Plus could be treated as a single employer, the Court

United States District Court
For the Northern District of California

1  rejects the claim that DLC and A Plus collectively partially

2  withdrew from the Plan.  The Plan may not collect from Defendants

3  based on the 2015 Assessment.

4      Nevertheless, the facts presented in the course of the

5  parties' summary judgment briefing suggest that the Plan may be

6  entitled to withdrawal liability based on alternative theories.

7  It appears that DLC may have partially withdrawn as a standalone

8  entity and that A Plus may have completely withdrawn, without

9  reference to DLC.  However, both theories go beyond what was

10 alleged in the Plan's amended complaint and each theory raises

11 additional questions that the Court cannot resolve on the record

12 presented.

13     Therefore, in ruling on the various cross motions for summary

14 judgment, the Court also stays these proceedings to allow the

15 parties to resolve DLC's, A Plus' and AtoZ's alleged withdrawal

16 liability at arbitration.  Specifically, the Court instructs the

17 Plan (if it wishes to pursue its claims) to issue the

18 notifications required by 29 U.S.C. § 1399(b)(1) to DLC for any

19 alleged partial withdrawal and to A Plus and AtoZ for any alleged

20 complete withdrawal.  Both notices must be served within thirty

21 days of the issuance of this order.  At that point, the parties

22 may initiate arbitration in conformity with ERISA.  Once

23 arbitration is complete, the parties may move to lift the stay,

24 seek enforcement of any arbitral award, and ask the Court to

25 resolve any questions not reserved for the arbitrator, i.e., the

26 extent of any alleged controlled group.

27

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

I.   Evidentiary Objections

The Court first addresses Defendants' objections to evidence offered by the Plan in support of its summary judgment motion. The Court overrules as moot Defendants' objections to the Trento Declaration because the Court does not rely on the disputed statements therein.  The Court overrules as moot Defendants' objections to the Minser Declaration for the same reason.  The Court sustains the Lawley Entities' objections to the Declaration of Michele R. Stafford because the Court does not reach the question of whether the Plan is entitled to attorneys' fees.

II.   DLC

A.   DLC Did Not Waive the Right to Contest its Controlled Group Status

The Plan does not explicitly argue that DLC and A Plus ever actually formed a controlled group.  The Plan instead insists that DLC waived its right to contest its controlled group status by failing to seek arbitration after the 2015 Assessment.  DLC argues that it still may contest its controlled group status under a judicially-created exception to the general rule that all disputes concerning withdrawal liability must be resolved by arbitration.

Under 29 U.S.C. § 1401(a)(1), "[a]ny dispute over withdrawal liability as determined under the enumerated statutory provisions shall be arbitrated."  Teamsters Pension Trust Fund-Board of Trustees v. Allyn Transp. Co., 832 F.2d 502, 504 (9th Cir. 1987) (citation and internal quotation marks omitted) (alteration in original).  The enumerated statutory provisions are §§ 1381 through 1399 of Title 29.  29 U.S.C. § 1401(a)(1).  However, whether a defendant is an "employer" under the MPPAA is governed

by § 1301(b)(1).  See Auto. Indus. Pension Tr. Fund v. Tractor

Equip. Sales, Inc., 73 F. Supp. 3d 1173, 1184 (N.D. Cal. 2014);

Pension Plan for Pension Tr. Fund for Operating Engineers v.

Galletti Concrete, Inc., No. 13-cv—3176-SI, 2013 WL 5289017, at *2

(N.D. Cal. 2013).  As a result, several circuit courts have held

that whether a defendant is an employer is a matter of law to be

decided not by an arbitrator but instead by a court.  Galletti

Concrete, 2013 WL 5289017, at *2 (collecting cases).  The Ninth

Circuit has not directly addressed this issue.  Id.

Section 1301(b) says that "all employees of trades or

businesses . . . which are under common control shall be treated

as employed by a single employer[.]"  So, although case law on the

failure-to-arbitrate issue generally speaks in terms of whether a

defendant contests its "employer" status, the question can be

reframed as whether the defendant contests its status as a trade

or business under common control with some other defendant or, in

other words, whether the defendant contests its controlled group

status.  Cf. DeBreceni v. Graf Bros. Leasing, 828 F.2d 877, 879

(1st Cir. 1987) ("The MPPAA used the word 'employer' in amending

[ERISA] without defining the word[.]"); Galletti Concrete, 2013 WL

5289017, at *4 ("In sum, because plaintiffs have failed to allege

the defendants are within the same control group as the

withdrawing entity, plaintiffs have failed to sufficiently allege

that defendants are 'employers' under ERISA and the MPPAA.").

Thus, persuasive authority that is not contradicted by the

Ninth Circuit suggests that DLC may contest its controlled group

status in this Court.  The Plan counters that controlled group

status is within the scope of § 1401(a)'s mandatory arbitration

United States District Court
For the Northern District of California

rule because the "actuary's assumptions or calculations" of withdrawal liability "go to the heart of the assessment" and are therefore determinations made under §§ 1381-99.  The actuary's assumption in this case was that DLC and A Plus formed a single employer under the MPPAA.

The Plan would have the Court erase any distinction between the enumerated provisions of § 1401(a)—which concern when a withdrawal takes place and how to calculate the withdrawing employer's liability, see 29 U.S.C. §§ 1381-99—and § 1301(b), which gets at the threshold question of whether a plaintiff has sued the right defendant.  Under the Plan's reading of the statute, if the Plan was incorrect in treating DLC and A Plus as a single employer, DLC would be liable not despite that error but because of it.

The Plan also argues that DLC is barred from contesting its controlled group status because it admitted in its answer that it is an "employer within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5)."  Am. Compl. ¶ 5; DLC Answer ¶ 5.[2]  This argument is similarly unpersuasive.

Although some district courts have applied the § 1002(5) definition of "employer" to determine withdrawal liability under the MPPAA, at least three circuit courts and multiple district courts have held that the two concepts are distinct.  See Seaway Port Auth. of Duluth v. Duluth-Superior ILA Marine Ass'n Restated

_____

    [2] An "ERISA employer" under 29 U.S.C. § 1002(5) is a "person acting directly as an employer . . . in relation to an employee benefit plan[.]"

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Pension Plan, 920 F.2d 503, 507 (8th Cir. 1990) (collecting cases).  One reason is that ERISA expressly limits the application of § 1002, which is a list of definitions, to "this subchapter." DeBreceni, 828 F.2d at 879 (quoting 29 U.S.C. § 1002).  The Plan gives the Court no reason to deviate from this persuasive authority.  Accordingly, DLC's admission that it is an "employer" under § 1002(5) has no bearing on whether it incurred withdrawal liability under the MPPAA.

B.   DLC Was Not Part of a Controlled Group with A Plus

Having determined that DLC may still contest its controlled group status despite failing to arbitrate the matter, the Court further concludes that DLC was not part of a controlled group with A Plus.

"Common control requires that the same group of people or organizations (1) own a controlling interest in each business alleged to be under *common control*, and (2) accounting only for identical ownership, the same group of people or organizations are in *effective control* of each business alleged to be under common control."  Galletti Concrete, 2013 WL 5289017, at *3 (citations omitted) (emphasis in original).  There are multiple varieties of controlled groups, including parent-subsidiary and brother-sister. In the case of a brother-sister group, controlling interest means that a group of five or fewer people own "at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation."  26 C.F.R. § 1.414(c)-2(b)(2)(i)(A).  Effective control means that "taking into account the ownership" of those same five or fewer people

14

"only to the extent such ownership is identical with respect to each such organization," such persons "own stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation."  Id. §§ 1.414-2(c)(1)-(2).

As noted above, the Plan does not argue that DLC was ever part of a controlled group with A Plus.  The evidence proffered by DLC helps explain that silence.  Steve Hay has been the sole shareholder of DLC since 2012, and before that all of the stock was held in trust for the benefit of Barbara Lawley.  Hay Decl. ¶¶ 2-3.  Meanwhile, Rodney Lawley has been the sole shareholder of A Plus (via the Rodney and Penny Trust) for the company's entire existence.  Lawley Decl. ¶¶ 4-5.  Hay never had any interest in A Plus and Rodney Lawley never had an interest in DLC.  The record does not reflect that DLC and A Plus ever shared a common ownership such that they would qualify as a brother-sister controlled group under 26 C.F.R. § 1.414(c)-2.  Therefore, regardless of whether DLC or A Plus withdrew from the plan, one cannot be held liable for the debts of the other.

C.   Conclusion as to DLC

The Plan separately argues that DLC is liable for a partial withdrawal as a standalone entity.  According to the Plan's actuary, DLC experienced the requisite decline in contributions to subject it to partial withdrawal liability of about $500,000.  Minser Supp. Decl. ¶ 6, Ex. E.  DLC responds that it is exempted from such liability under a special rule for employers who work in

United States District Court
For the Northern District of California

the building and construction industries.  See 29 U.S.C. §§ 1383(b)(1), 1388(d)(1).

The Plan's claim that DLC partially withdrew on its own goes beyond what was alleged in the amended complaint, and the construction industry exemption issue was not fully briefed by the parties.  Just as importantly, the Plan never formally assessed DLC for a standalone partial withdrawal under 29 U.S.C. § 1399(b)(1).  The Court therefore stays these proceedings and instructs the Plan, if it wishes to pursue this claim, to deliver to DLC a § 1399(b)(1) notice alleging a partial withdrawal.  At that point, the parties may initiate arbitration as to DLC's withdrawal liability, if any, and whether DLC enjoys protection under the construction industry exception.  If the Plan wins at arbitration, it may then return to this Court and seek leave to amend its complaint to enforce the arbitral award.

To summarize, the Court denies the Plan's summary judgment motion insofar as it seeks to enforce the 2015 Assessment against DLC for a joint DLC-A Plus partial withdrawal.  The Court correspondingly grants in part DLC's cross motion.  Whether DLC is liable as a standalone entity for a partial withdrawal will be for an arbitrator to decide.

III. A Plus and AtoZ

The Plan also moves for summary judgment against A Plus and AtoZ and they cross move against the Plan.

As noted above, the Court dismisses with prejudice the claims against Lawley Bros. and Pennrod, and Mr. Trucker has not responded to the complaint.  The remaining Lawley Entities are A Plus and AtoZ.

United States District Court
For the Northern District of California

The Plan's theory is that DLC and A Plus together partially withdrew and that AtoZ is jointly and severally liable because it is part of a controlled group with A Plus. However, in rejecting the DLC-A Plus controlled group theory, the Court necessarily found that there is no such link between DLC and AtoZ. The Court denies the Plan's motion insofar as it seeks to recover from A Plus and AtoZ for the alleged DLC-A Plus partial withdrawal.

A Plus and AtoZ advance their own arguments for why they are entitled to summary judgment. First, they say that they never received proper notice of the 2015 Assessment. Second, they claim that, because Rodney and Penny Lawley received a bankruptcy discharge, the Plan cannot collect from A Plus and AtoZ. They also dispute the Plan's assertion that A Plus and AtoZ formed a controlled group. The Court rejects the first two arguments and declines to reach the third.

A.   A Plus and AtoZ Received Adequate Notice of the 2015 Assessment

A Plus and AtoZ argue that they never received proper notice of the 2015 Assessment. They allege that they did not receive the original § 1399(b)(1) notice and that the subsequent acceleration letter was insufficient for failing to include the amount of alleged liability and a schedule of demanded payments. However, multiple courts have concluded that proper service of the civil complaint is adequate to put the defendant on notice of its alleged withdrawal liability. Nw. Administrators, Inc. v. N. Distribution, LLC, No. 10-cv-0507-JCC, 2011 WL 252946, at *2 (W.D. Wash. 2011) (collecting cases). A Plus and AtoZ do not provide the Court with any reason to depart from that authority, do not

contest the Plan's proper service of the complaint and do not
contend that they took any steps since receiving the complaint to
pursue arbitration.  See Trustees of Amalgamated Ins. Fund v. Vi-
Mil, Inc., No. 85-cv-8424-LLS, 1987 WL 14665, at *3 (S.D.N.Y.
1987)("[Defendant] could have applied for a stay of this action
while its arbitration claim was pending.  Having failed to do so,
[Defendant] has waived its right to arbitration.").  The Court
therefore rejects the notice argument and denies that portion of
the summary judgment motion.

> B.   Rodney and Penny Lawley's Chapter 7 Bankruptcy Did Not
>      Discharge the Debts of A Plus and AtoZ

A Plus and AtoZ also contend that any debts they might owe to
the Plan were discharged in the personal bankruptcy of Rodney and
Penny Lawley.  This argument is without merit.

In 2013 Rodney and Penny Lawley filed for bankruptcy under
Chapter 7 of the Bankruptcy Code.  Decl. of Michael J. Pledger ¶¶
3-4, Ex. A.  The petition identified the debtors as follows:
"Lawley, Rodney Ray; Lawley, Penny Ann; dba Mr. Trucker, Inc.; dba
A Plus Readymix, Inc.; dba A Plus Materials Recycling, Inc." Id.,
Ex. A.  The petition was silent as to AtoZ, the Texas LLC.  See
Pledger, Decl., Ex. A.  The Plan filed a notice of claim.  Id. ¶
6.  The court later discharged the Lawleys' eligible debts.  Id. ¶
8.

Under § 727 of the Bankruptcy Code, "'[t]he court shall grant
the debtor a discharge unless . . . the debtor is not an
individual.'  11 U.S.C. § 727(a)(1).  "Partnerships and
corporations may not discharge their debts in a liquidation
proceeding under Chapter 7 of the Code." NLRB v. Better Bldg.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  *Supply Corp.*, 837 F.2d 377, 378 (9th Cir. 1988) (citation

2  omitted).

3      Here, the Lawleys' personal bankruptcy could not have had any

4  effect on the A Plus and AtoZ because corporate debts are not

5  dischargeable under Chapter 7.  A Plus and AtoZ assert a kind of

6  estoppel argument based on the Plan's notice of claim in the

7  bankruptcy proceedings but it is without merit.  The Lawleys'

8  bankruptcy did not concern A Plus or AtoZ and therefore has no

9  bearing on this case.  The Court denies the summary judgment

10  motion on this issue as well.

11      C.   Conclusion as to A Plus and AtoZ

12      Finally, A Plus and AtoZ argue that they were not part of a

13  controlled group.  The issue is mooted, at least for now, by the

14  Court's conclusion that there was no DLC-A Plus controlled group:

15  if there was no DLC-A Plus partial withdrawal, then there is no

16  withdrawal for which A Plus and AtoZ could be liable, even if they

17  are a single employer under the MPPAA.  However, the facts

18  presented during the summary judgment briefing suggest that A Plus

19  might be liable for a standalone complete withdrawal.  If that is

20  so, then AtoZ might be liable as a controlled group member.  The

21  Plan did not formally notify A Plus under 29 U.S.C. § 1399(b)(1)

22  of any alleged complete withdrawal,[3] did not allege an A Plus

23  standalone complete withdrawal in its amended complaint and did

24  not advance that theory in its summary judgment motion.  As a

25  result, the Court cannot determine on the record presented if and

26

27      [3] The Plan rescinded the 2011 assessment.

28

when such a withdrawal took place and whether AtoZ might be liable as part of a controlled group with A Plus.  If A Plus withdrew in 2010, when it ceased operations, then it might not have been in a controlled group with AtoZ, which was not formed until 2012.  <u>See</u> 29 U.S.C. § 1383(e) ("For purposes of this part, the date of a complete withdrawal is the date of the cessation of the obligation to contribute or the cessation of covered operations."); <u>Teamsters Pension Tr. Fund of Philadelphia v. Brigadier Leasing Assocs.</u>, 880 F. Supp. 388, 396 (E.D. Pa. 1995) ("A trade or business that becomes part of a controlled group with the employer after the withdrawal has no obligation to contribute and is never a contributing MPPAA employer.").  The Court cannot decide this matter on the record presented.

To summarize, the Court denies the Plan's summary judgment motion insofar as it seeks enforce the 2015 Assessment against A Plus and AtoZ.  The Court denies A Plus and AtoZ's cross summary judgment motion on the notice and bankruptcy issues.  If the Plan wishes to pursue a claim against A Plus and AtoZ, it must first properly deliver a § 1399(b)(1) notice alleging a complete withdrawal.  At that point, the parties may initiate arbitration under the normal ERISA procedures.  If the Plan succeeds at arbitration, it may return to this Court and seek leave to amend its complaint to enforce the arbitral award.  At that point, the Court will be in a position to determine the scope of any alleged A Plus-AtoZ controlled group.

CONCLUSION

By rejecting the alleged 2015 Assessment, the Court is sending the Plan back to the beginning of the withdrawal liability

**United States District Court**
For the Northern District of California

collection process.  The Plan is not entitled to judgment based on the 2015 Assessment and, if it wishes to pursue its alternative claims, it must start by formally giving notice under 29 U.S.C. § 1399(b)(1) to DLC, A Plus and AtoZ.  To summarize, the Court dismisses with prejudice the Plan's claims against Lawley Bros. and Pennrod; finds that Mr. Trucker has not responded to the complaint; denies the Plan's summary judgment motion insofar as it seeks to enforce the alleged 2015 Assessment against Defendants and correspondingly grants in part DLC's cross motion; denies A Plus and AtoZ's cross summary judgment motion as to the notice and bankruptcy issues; in all other respects, denies each of the three summary judgment motions; dismisses the Plan's complaint, which is premised on the 2015 Assessment, with leave to amend; and stays the case.

The Court instructs the Plan to notify DLC of any alleged partial withdrawal and A Plus and AtoZ of any alleged complete withdrawal.  Both notices must be served within thirty days of the issuance of this order.  The parties may then initiate arbitration in conformity with ERISA.  Thereafter, if warranted, the Plan may seek to lift the stay and request leave to file an amended complaint.

The remaining parties must file a brief joint status report in ninety days, and every ninety days thereafter, to apprise the Court of the status of the litigation.

IT IS SO ORDERED.

Dated: August 13, 2018

CLAUDIA WILKEN
United States District Judge